**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD CHAKEJIAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  07-2211 |
| | ) | |
| v. | ) | |
| | ) | |
| EQUIFAX INFORMATION SERVICES LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT EQUIFAX INFORMATION
<u>SERVICES LLC'S MOTION FOR SUMMARY JUDGMENT</u>**

King & Spalding LLP
Barry Goheen, Esq.
Lewis P. Perling, Esq.
1180 Peachtree Street N.E.
Atlanta, GA  30309-3521
(404) 572-4600
Fax (404) 572-5100

Christie, Pabarue, Mortensen and
Young, A Professional Corporation
Catherine Olanich Raymond, Esq.
1880 JFK Boulevard - 10th Floor
Philadelphia, PA  19103
(215) 587-1600

Attorneys for EQUIFAX INFORMATION
SERVICES LLC

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE ......................................... 3

I.      EQUIFAX AND ITS PUBLIC RECORDS PROCEDURES ............................. 3

        A.      Equifax Collects Public Records From The Source ................................ 4

        B.      Equifax Reinvestigates Public Record Disputes ..................................... 5

        C.      The Public Record Vendor Is Not A "Furnisher" Of Information For
                Purposes Of The FCRA .......................................................................... 7

        D.      Equifax Communicates With Consumers After Reinvestigations .......... 8

        E.      No Statute, Agency, Or Court Has Provided Guidance For Equifax
                Regarding The Contents Of Its Dispute Response Letters ...................... 9

                1.      Lack Of Guidance In FCRA ....................................................... 9

                2.      Lack Of Guidance From Federal Trade Commission ................. 9

                3.      Lack Of Guidance From Courts .................................................. 9

                4.      Matter Of "First Impression" Per Plaintiff's Own Expert ........ 10

II.     PLAINTIFF DISPUTES A BANKRUPTCY ON HIS EQUIFAX CREDIT FILE ......... 11

        A.      The Reported Bankruptcy On Plaintiff ................................................ 11

        B.      Plaintiff's Disputes ............................................................................... 11

                1.      The January 2007 Dispute ........................................................ 11

                2.      The March 2007 Dispute .......................................................... 12

III.    PROCEDURAL HISTORY ............................................................................. 13

        A.      Plaintiff's Original Complaint ............................................................. 13

        B.      Plaintiff's Amended Complaint ............................................................ 14

        C.      The Class Certification Phase .............................................................. 15

ARGUMENT ............................................................................................................. 15

I.    THE SUPREME COURT'S OPINION IN *SAFECO* CONTROLS THE ANALYSIS
      OF PLAINTIFF'S WILLFULNESS CLAIM ................................................................ 15

II.   UNDER *SAFECO*, EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT ON
      PLAINTIFF'S WILLFULNESS CLAIM ....................................................................... 17

      A.    Equifax Did Not Willfully Violate the FCRA Where (1) It Was Not Required
            By The FCRA To Identify The Source Of The Record Because Plaintiff Did
            Not Request It And (2) Its Conclusion That A Public Record Vendor's Name
            Need Not Be Disclosed In A Descript .................................................................. 17

            1.    Plaintiff Did Not Request A Description Of Equifax's Procedures ......... 19

            2.    The FCRA Does Not Define The Term "Furnisher," And No Court Has
                  Construed That Term To Include Public Record Vendors ....................... 20

                  a.    Section 1681i(a)(6)(B) Does Not Define The Term "Furnisher,"
                        And The Term Has Been Construed To Apply Only To Creditors
                        And Lenders With Consumer Relationships, Not To Public Record
                        Vendor ........................................................................................... 20

                  b.    Other Sections Of The FCRA, While Not Defining "Furnisher,"
                        Also Suggest That The Term Does Not Include Public Record
                        Vendors .......................................................................................... 22

                  c.    Disclosure Of The Identity Of A Public Record Vendor
                        Would Not Further The End To Which Section 1681i(a)(6)(B)(iii)
                        Is Directed ..................................................................................... 23

                  d.    As A Matter Of Law, Plaintiff Cannot Meet The *Safeco* Standard
                        As It Applies To A Public Record Vendor Being A "Furnisher"
                        For Purposes Of The FCRA .......................................................... 25

      B.    Even If The Public Record Vendor Could Be Deemed A "Furnisher,"
            Equifax Did Not Willfully Violate The FCRA By Allegedly Not Identifying
            The Vendor In Its Response Letter ...................................................................... 26

            1.    Equifax's Interpretation Of The FCRA With Regard To Response
                  Letters Under Section 1681i(a)(6) Was Not
                  Objectively Unreasonable ........................................................................ 27

            2.    There Is A Complete Absence Of Judicial And Administrative
                  Guidance On The Critical Issues In This Case ........................................ 29

                  a.    The Issues In This Case Are Of "First Impression," As Plaintiff's
                        Expert Testified ............................................................................. 29

b.      Cases From This Court Consistently Grant Summary
        Judgment On Willfulness Claims Where, As Here, There
        Has Been An Absence Of Judicial Or Administrative
        Guidance On The Issue(s) In The Case ....................................... 31

c.      Federal Appellate Courts Have Applied *Safeco* To Affirm Grants
        Of Summary Judgment Due To Plaintiffs' Failure To Satisfy The
        *Safeco* Standard............................................................................. 33

d.      Other District Courts Have Entered Summary Judgment
        On FCRA Willfulness Claims Where, As Here, There Is No
        Evidence Of Recklessness And An Absence Of Judicial
        And FTC Guidance ....................................................................... 35

CONCLUSION....................................................................................................................... 37

## **INTRODUCTION**

In a case that Plaintiff's own expert has called a case of "first impression," Plaintiff has sued Equifax Information Services LLC ("Equifax") under the Fair Credit Reporting Act ("FCRA") alleging a single claim of willfulness.  Specifically, the narrow claim of "first impression" alleges that Equifax willfully violated § 1681i of the FCRA by failing to identify its public record vendor in the letter Equifax sent Plaintiff advising him of Equifax's resolution of his dispute about a bankruptcy record that appeared on his credit file.  Plaintiff is *not* pursuing a theory that Equifax failed to investigate or failed to remove the bankruptcy from his credit file; instead, his claim -- the only one asserted in this case by Plaintiff and on behalf of a class -- is premised on the letter and Equifax's alleged failure to identify the public record vendor.

Under the willfulness standard articulated by the Supreme Court in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007), the Court should grant Equifax's motion for summary judgment. Under *Safeco*, the FCRA plaintiff must establish that the defendant engaged in conduct that was willful or, at a minimum, reckless when assessed under an objective standard.  Plaintiff cannot carry that heavy burden here.

First, the specific provision under which Plaintiff asserts his claim, § 1681i(a)(6)(B)(iii), requires only that the consumer reporting agency disclose the name and address of "any furnisher" if a "description of the procedure used to determine the accuracy and completeness of the information" is "requested by the consumer."  Here, there is no evidence in the record that Plaintiff ever requested a "description of the procedure" from Equifax that would trigger an obligation on the part of Equifax to identify any other entity in its letter responding to Plaintiff. For that basic reason, Plaintiff's willfulness claim fails; it is difficult to perceive how Equifax

could willfully violate a statutory provision that was not triggered under the undisputed facts of this case.

Second, the relevant portion of subsection (iii) quoted above requires only that the consumer reporting agency disclose the name and address of a "furnisher" in the letter. The term "furnisher" is not explicitly defined in § 1681i(a) of the FCRA. Moreover, neither the federal courts nor the Federal Trade Commission has ever construed the term "furnisher" to include a public record vendor that, pursuant to a contract with a consumer reporting agency, supplies data about a consumer's debts to or filings with others; indeed, the courts consistently have construed that term to apply only to lenders and creditors and similar entities with whom consumers have accounts or relationships. The only statutory and judicial guidance supports the conclusion that Equifax did not objectively unreasonably construe § 1681i(a)(6)(B)(iii) by not disclosing its public record vendor. Under *Safeco*, summary judgment is warranted.

Third, even if Equifax's public record vendor somehow could be deemed a "furnisher," Equifax did not willfully violate the FCRA by not disclosing the existence and identity of its public record vendor in the letter it sent to Plaintiff. Neither the Federal Trade Commission nor any federal court has offered any instruction or guidance on the precise language to be used in response letters sent under subsection (iii), and certainly has not required a consumer reporting agency to disclose the identity of its public record vendor, particularly given the lack of an explicit definition of the term "furnisher" in the FCRA. In light of the statutory ambiguities, which indisputably are "less than pellucid" for purposes of *Safeco*, it was not objectively unreasonable for Equifax to interpret the FCRA as not requiring Equifax to disclose the identity of its public record vendor. Indeed, Plaintiff's own expert testified, on multiple occasions in his deposition, that the unique issue presented in this case is one of "first impression" in any court,

and that no industry standard has been established with regard to the contents of the type of letter Plaintiff challenges in this case.

Numerous decisions from judges on this Court have granted motions for summary judgment on willfulness claims where, as here, there is an absence of statutory, judicial, and agency guidance on the specific issues in the case.  Likewise, federal courts of appeals have affirmed summary judgments for the same reasons, and district courts in other jurisdictions have applied *Safeco* to grant summary judgment on willfulness claims.  There is no reason for this Court to deviate from these consistent rulings given the lack of statutory and judicial guidance on the issues in this case.

In short, Plaintiff cannot meet his heavy burden of showing a willful violation of the FCRA as a matter of law.  Equifax reasonably construed its obligations under the FCRA and Plaintiff himself testified that he had no evidence of reckless conduct by Equifax.  The Court should, therefore, grant Equifax's motion for summary judgment.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### I.   EQUIFAX AND ITS PUBLIC RECORDS PROCEDURES

Equifax is a consumer reporting agency ("CRA") as defined by the FCRA.  Declaration of Alicia Fluellen ("Fluellen Decl."), Ex. A hereto, ¶ 3.  Equifax gathers information from various sources, including credit card companies, mortgage companies, collection agencies, and court records, to create credit files on more than 200 million consumers in the United States.  *Id.* While the majority of credit report items are accounts that a consumer has opened with a lender, such as credit cards, automobile or other installment loans, or mortgages, information about a consumer's transactions or experiences with lenders alone does not present a complete credit profile of the consumer.  *Id.* at ¶ 4.  Thus, where Equifax can associate a civil judgment,

bankruptcy, or lien with a consumer, it will include that public record information in its credit files as well. *Id.* at ¶ 5; Deposition of Alicia Fluellen ("Fluellen Dep."), Ex. B hereto, 8:25-9:10.

### A.   Equifax Collects Public Records From The Source.

Unlike consumer account information, judgment, bankruptcy, and lien information is not regularly supplied to Equifax by entities that are themselves the prime users of credit reports. Fluellen Decl., ¶ 6.   Courthouses and clerks' offices across the country make public records available in different formats, by different means, and at different time intervals from various public access points.   Declaration of Mark Johnson of LexisNexis Risk Data Retrieval Services LLC ("Johnson Decl."), Ex. E hereto, ¶ 5.   Public record information is not published to consumer reporting agencies as are, for instance, monthly uploads from credit card companies containing current information on their active accounts.   Fluellen Decl., ¶ 7.   Therefore, to include public record information in its credit reports, Equifax must retrieve the data from the courthouses and clerks' offices. *Id.* at ¶ 8.

Historically, Equifax's employees obtained the court records for the company. Declaration of Shawn DeGrace ("DeGrace Decl."), Ex. C hereto, ¶ 3; Deposition of Shawn DeGrace ("DeGrace Dep."), Ex. D hereto, 23:20-24:7.   Since at least the late 1980s, however, Equifax has maintained independent contractor relationships with public record vendors ("PRVs") -- companies that specialize in gathering public records and who act as Equifax's agent to collect the information.   DeGrace Decl., ¶ 4; DeGrace Dep., 23:9-19; Johnson Decl., ¶ 6. Currently, Equifax contracts with a PRV, LexisNexis Risk Data Retrieval Services LLC ("LexisNexis"), whose employees are specifically trained to collect information relating to court filings.   DeGrace Decl, ¶ 5; DeGrace Dep., 16:4-17:9, 18:1-19:7, 24:8-12; Fluellen Dep., 10:19-12:12; Johnson Decl., ¶¶ 3, 4.

Equifax's PRV collects information directly from the courthouses where judgments, bankruptcies, and liens are filed, or from other appropriate electronic databases designated by a court as "official public records."  DeGrace Decl., ¶ 6; DeGrace Dep., 32:4-13; Johnson Decl., ¶¶ 3, 5.  All bankruptcies provided by the PRV must be collected directly from the appropriate court and not from secondary sources.  DeGrace Decl., ¶ 7.  The use of a PRV is standard practice in the credit reporting industry.  *Id*. at ¶ 8; Johnson Decl., ¶ 4.

The PRV conducts no transactions and has no experience with individual consumers about whom Equifax has prepared consumer reports that include public record information.  Johnson Decl., ¶ 8.  The public record information that the PRV transmits to Equifax in bulk does not relate in any way to its transactions or experiences with any consumer.  *Id*.  Neither the PRV nor its employees or independent contractors have any specific or firsthand knowledge of the events underlying the information contained in the public records collected and transmitted by the PRV.  *Id*.

The PRV is not the "source" of public record information obtained by Equifax.  *Id*. at ¶ 13.  The PRV merely acts as a conduit between the information source -- the courts or other official locations where public records are reported -- and Equifax.  *Id*.  If it so chose, Equifax could send an employee to a courthouse to check court records, as it did historically, or it could use another conduit -- such as an internet service provider if the court has a public website -- to obtain the same information that is transmitted to Equifax by the PRV.  *Id*.; DeGrace Decl., ¶ 9.

**B.      Equifax Reinvestigates Public Record Disputes.**

Equifax maintains detailed procedures for the investigation of a dispute regarding information included on a consumer's credit file.  Fluellen Decl., ¶ 9.  Upon receipt of such a dispute, Equifax applies those procedures to verify the information obtained from the source.  *Id.*  Equifax contacts the original source to check the disputed information.  *Id.*  Information that

5

cannot be verified is suppressed so that it does not reappear even if the source continues to send the same data. *Id*.

Upon receipt of a dispute, Equifax first reviews and considers the relevant information that the consumer submits. *Id*. at ¶ 10. If that initial review does not resolve the issue, Equifax then investigates by contracting the source of the information. *Id*. Equifax generally sends furnishers the request for a reinvestigation via e-OSCAR, a web-based, automated system that allows a consumer reporting agency to route automated consumer dispute verification forms to data furnishers. *Id*. at ¶ 11.

If the dispute relates to a tradeline, Equifax contacts the furnisher of the information, which is the creditor or collection company that reported it to Equifax. *Id*. at ¶ 12. When a consumer disputes public record information appearing on his or her file, there is no furnisher to contact. *Id*. at ¶ 13; Fluellen Dep., 22:3-23:4. Equifax instead goes back to the court, through its agent, the current PRV for the court in question. Fluellen Decl., ¶ 14; Fluellen Dep., 43:15-19; Johnson Decl., ¶ 6. The PRV goes to the original source of the information (generally the courthouse or docket) on Equifax's behalf, re-collects information, and transmits it to Equifax. Fluellen Decl., ¶ 15; Fluellen Dep., 20:23-21:8; DeGrace Decl., ¶ 10; Johnson Decl., ¶ 7.

The PRV does not conduct an investigation or analysis of whether a public record that has been disputed with Equifax by a consumer should be removed from the consumer's credit file, or amended in any way, but only gathers the information related to the item and transmits that information to Equifax. Fluellen Decl., ¶ 16; DeGrace Dep., 40:7-22; Johnson Decl., ¶ 9. The PRV's role is only to gather current information about the public record and its status and transmit that information to Equifax for Equifax's use in evaluating the dispute. Fluellen Decl., ¶ 16; Johnson Decl., ¶ 9. The PRV does not use the e-OSCAR system that is used by furnishers,

but instead transmits its information to Equifax via a different electronic system.  Fluellen Decl., ¶ 17; Fluellen Dep., 20:10-18; Johnson Decl., ¶ 10.  Equifax requires the PRV to verify all information from the "primary source," defined as the courthouse from which the record was obtained, and prohibits the PRV from using an internal database as a means of verifying a record.  DeGrace Decl., ¶ 11; DeGrace Dep., 40:23-41:4, 41:23-42:6.

**C.    The Public Record Vendor Is Not A "Furnisher" Of Information For Purposes Of The FCRA.**

Per the terms of a contract, the PRV is an independent contractor of Equifax for purposes of obtaining public records.  DeGrace Decl., ¶ 12; Johnson Decl., ¶¶ 11, 12.  Equifax outsources the activity that it formerly handled itself with direct employees because the PRVs specialize in obtaining and reading court records.  DeGrace Decl., ¶ 12.  Public records are not furnished to Equifax, but instead are obtained by Equifax, through its PRV.  *Id.* at ¶ 14; Johnson Decl., ¶ 14.

The term "furnisher" or "furnisher of information" is not explicitly defined by the FCRA.  Fluellen Decl., ¶ 18.  Given the absence of such a definition, Equifax has construed the term "furnisher" to mean a company, such as a bank or lender, that provides data to the consumer reporting agencies regarding its transactions and experiences with consumers.  *Id.* at ¶ 19.  The PRV at issue has construed that term similarly.  Johnson Decl., ¶ 14.

Equifax is not aware of any court or the Federal Trade Commission ("FTC") construing the term "furnisher" to include a public record vendor.  Fluellen Decl., ¶ 20.  Likewise, Equifax's PRV for this case is unaware of any court or the FTC construing the term "furnisher" to include a public record vendor.  Johnson Decl., ¶ 16.  Accordingly, the PRV is not a "furnisher of information" as that term is used in the FCRA, *see* Johnson Decl., ¶ 14, and Equifax does not consider its PRV to be a "furnisher of information" for purposes of complying with its obligations under the FCRA, *see* Fluellen Decl., ¶ 21.

7

**D.      Equifax Communicates With Consumers After Reinvestigations.**

Upon completion of a reinvestigation, Equifax sends the consumer a letter that is written specifically to comply with the requirements of the FCRA.  Fluellen Decl., ¶ 22; Fluellen Dep., 27:20-28:25.  The response letter includes the results of the reinvestigation and a description of the procedures used to determine the accuracy/completeness of the information, including the name, address, and telephone number of the furnisher of the disputed information.  Fluellen Decl., ¶ 23.

It is important to note, however, that the FCRA provision at issue in this case, 15 U.S.C. § 1681i(a)(6)(B)(iii), does not require Equifax to provide a description of the procedures used to determine the accuracy or completeness of the information in response letters it sends to a consumer following its reinvestigation.  Fluellen Decl., ¶ 24.  Under subsection (iii), a consumer reporting agency is required to provide a description of the procedures *only* if the consumer requests it.  *Id.*, ¶ 25; 15 U.S.C. § 1681i(a)(6)(B)(iii).  Nevertheless, Equifax provides a description of procedures even if not requested by the consumer as an additional service to its consumer.  Fluellen Decl., ¶ 26.

In the case of a disputed public record, there is no furnisher for Equifax to identify.  *Id.* at ¶ 27.  Instead, in order to assist the consumer, Equifax identifies the source of the information by providing the court's name and address so that a consumer may obtain the public record if he or she desires.  *Id.* at ¶ 28; Fluellen Dep., 45:3-23; 46:16-47:10.  Equifax does not provide the name and address of its PRV to consumers in responding to disputes because the PRV is merely acting as Equifax's agent for obtaining public records.  DeGrace Decl., ¶ 15; Fluellen Dep., 40:4-17; Deposition of Andy Klaer, Ex. F hereto, 15:23-16:18, 20:10-20.  Because there is no "furnisher" of a public record, Equifax identifies the source of the information.  Fluellen Decl., ¶ 29.  The

source of a judgment, lien, or bankruptcy is not the PRV, but is the court at which the public

record is held. *Id*. at ¶ 30; Fluellen Dep., 25:2-7.

      **E.**      **No Statute, Agency, Or Court Has Provided Guidance For Equifax Regarding The Contents Of Its Dispute Response Letters.**

              **1.**      **Lack Of Guidance In FCRA**

The FCRA does not mandate the language that Equifax must include in its response

letters.  Fluellen Decl., ¶ 31.  The FCRA does not state that Equifax must identify its non-

furnisher agents, such as its PRV, in its letters sent to consumers responding to their disputes.  *Id*.

at ¶ 32.  Equifax maintains contracts with other non-furnisher vendors that are involved in the

reinvestigation process, including:  its mail vendor, Docufree Corp., which processes incoming

mail to Equifax; Sitel, which operates a call center to respond to incoming calls from consumers;

and Direct Data Capture LLC, which processes consumer dispute verification responses from

furnishers.  *Id*. at ¶ 33.  The FCRA does not state that Equifax must identify these vendors,

which, like the PRV, operate as Equifax's agents.  *Id*. at ¶ 34.

              **2.**      **Lack Of Guidance From Federal Trade Commission**

Likewise, the FTC has not instructed Equifax what language must be included in a

response letter.  *Id*. at ¶ 35.  The FTC has not instructed Equifax that the language that it uses in

its response letters is misleading, inaccurate, or somehow violates the FCRA.  *Id*. at ¶ 36.  The

FTC has not instructed Equifax that it must or should identify its non-furnisher agents, such as its

PRV, in its letters sent to consumers.  *Id*. at ¶ 37.  The FTC has not designated or characterized a

PRV as a "furnisher" under the FCRA.  Johnson Decl., ¶ 15.

              **3.**      **Lack Of Guidance From Courts**

Furthermore, to Equifax's knowledge, no court in any jurisdiction, including a federal

court of appeals, has held that the language in Equifax's response letters is misleading,

inaccurate, or violates the FCRA, or that Equifax should identify its PRV, or other agents, in response letters.   Fluellen Decl., ¶ 38.   No court has held that the language in Equifax's response letters is misleading, inaccurate, or violates the FCRA, or that Equifax should identify its PRV in response letters.   *Id.* at ¶ 39.   No jury has rendered a verdict in a case against Equifax in which the consumer alleged that the language in Equifax's letter violated the FCRA or misstated Equifax's reinvestigation procedures.   *Id.* at ¶ 40.

Prior to this case, Equifax was not aware of any prior allegation in any lawsuit that the language contained in the letter at issue in this case violated the FCRA, let alone that the language actually violates the FCRA.   *Id.* at ¶ 41; Deposition of Lewis Perling, Ex. G hereto, 33:7-34:17.   The use of a PRV is standard practice in the industry, yet neither of the other major consumer reporting agencies identifies its PRV in response to public record disputes.   Fluellen Decl., ¶ 42.   No federal court has designated or characterized a PRV as a "furnisher" under the FCRA.  Johnson Decl., ¶ 15.

### 4.      Matter Of "First Impression" Per Plaintiff's Own Expert

As Plaintiff's own purported expert testified, this case presents a matter of "first impression."   Deposition of Evan Hendricks, Ex. H hereto, 165:18-21; 201:4-202:12; 264:5-10. He is not aware of any judge or jury finding that Equifax or any other consumer reporting agency violated the FCRA related to the contents of a letter that it sends after a reinvestigation.   *Id.* at 147:7-24.   He is not aware of any opinion or decision by the FTC that Equifax or any other consumer reporting agency violated the FCRA related to the contents of a letter that it sends after a reinvestigation.   *Id.* at 147:25-148:6.   He is not aware of any case in which a judge or jury found that Equifax or any other consumer reporting agency's description of its reinvestigations procedures were insufficient under the FCRA.   *Id.* at 148:7-25.

Plaintiff's purported expert is not aware of any opinion or decision by the FTC that Equifax or any other consumer reporting agency's description of its reinvestigation procedures was insufficient under the FCRA.  *Id*. at 149:3-9.  He is not aware of the FTC ever addressing whether any letter from Equifax violates the FCRA.  *Id*. at 149:10-13.

## II.  PLAINTIFF DISPUTES A BANKRUPTCY ON HIS EQUIFAX CREDIT FILE.

### A.  The Reported Bankruptcy On Plaintiff

Included in Equifax's database is a credit file on the Plaintiff, Richard Chakejian. Fluellen Decl., ¶ 43.  In December 2006, Equifax's PRV provided information regarding a Chapter 7 bankruptcy filed in the United States Bankruptcy Court for the Eastern District of Pennsylvania.  *Id.* at ¶ 44.  The PRV reported that the case was dismissed.  *Id.*  The case was an involuntary bankruptcy wrongfully filed against Plaintiff.  Deposition of Richard Chakejian, Volume I ("Chakejian Dep. I"), Ex. I hereto, 113:25-115:19.  Equifax was not the only consumer reporting agency that was reporting the bankruptcy, as it appeared on other consumer reporting agencies' reports as well.  *Id*. at 95:6-9.

### B.  Plaintiff's Disputes

Plaintiff wrote to Equifax twice to dispute the accuracy of the bankruptcy record. Fluellen Decl., ¶ 45.  Plaintiff also claims that he called Equifax about the bankruptcy, though Equifax has no record of that dispute.  *Id*. at ¶ 41; Chakejian Dep. I, 132:15-133:6.

#### 1.  The January 2007 Dispute

In the first written dispute, dated January 16, 2007, Plaintiff stated:  "I noticed an error on my credit report under the PUBLIC RECORDS category.  Please be advised that I have never filed BANKRUPTCY and that you are reporting an error that is negatively impacting my credit provide and my credit score. . . ."  Fluellen Decl., ¶ 47; Chakejian Dep. I, 116:2-9, Ex. 6.  He enclosed a "Stipulation of Dismissal of Debtors' Motion For Sanctions Compensatory And

Punitive Damages," and circled a paragraph that stated, "any adverse credit report to any credit reporting agency should be stricken from the Chakejians' credit records."  Chakejian Dep. I, Ex. 6.

On January 22, 2007, Equifax received the letter and opened a reinvestigation case, otherwise referred to by Equifax as an ACIS case.  Fluellen Decl., ¶ 43.  On January 26, 2007, Equifax sent notice of the dispute to its PRV, ChoicePoint (the predecessor to LexisNexis) and instructed it that Plaintiff stated that the item was not his.  *Id.* at ¶ 49; DeGrace Dep., 16:4-17:9. Equifax asked its PRV to provide the complete identification information from the public record so that Equifax could compare it to what it already had on file.  Fluellen Decl., ¶ 45.  On January 26, 2007, the PRV responded to Equifax that the identification matched and that the record was reporting accurately.  *Id.* at ¶ 51; Fluellen Dep., 67:11-24.  That same day, Equifax, through its automated procedure, sent a response to Plaintiff.  Fluellen Decl., ¶ 52.  Equifax's system chose the "cons comm" or explanatory paragraph that stated that Equifax verified that the item belonged to Plaintiff.  *Id.* at ¶ 53.  Equifax provided the court's address to Plaintiff in case he had any additional questions about the item.  *Id.* at ¶ 54.

### 2.    The March 2007 Dispute

The second written dispute from Plaintiff was dated March 4, 2007.  *Id.* at ¶ 55; Deposition of Richard Chakejian, Volume II ("Chakejian Dep. II"), Ex. J hereto, 5:15-6:20, Ex. 12.  Plaintiff again enclosed the "Stipulation of Dismissal of Debtors' Motion For Sanctions Compensatory And Punitive Damages," this time with the clerk's stamp certifying the document. Fluellen Decl., ¶ 56; Fluellen Dep., 77:5-15.  Prior to sending the dispute to Equifax, Plaintiff went to the Bankruptcy Court at the address Equifax had provided him and obtained the certified stamp on the copy of the document.  Chakejian Dep. II, 7:5-8:6; Ex. 12.

On March 12, 2007,  Equifax received the letter and opened an ACIS case to begin its reinvestigation.  Fluellen Decl., ¶ 57.  On March 27, 2007, Equifax removed the bankruptcy from Plaintiff's credit file, based on the operator's note that the documents Plaintiff has sent were acceptable to do so.  *Id.* at ¶ 58; Fluellen Dep., 77:16-78:10.  On March 27, 2007, Equifax sent the response to Plaintiff showing that the item was deleted.  Fluellen Decl., ¶ 59.

While Plaintiff apparently challenges Equifax's conduct, he testified that he had no information that Equifax had acted recklessly toward him.  *See* Chakejian Dep. II, 64:12-20 (Q: "Sir, do you know of anything that Equifax did that was reckless toward you?  *** A: "I don't, no.") (objection excised).

## III.    PROCEDURAL HISTORY

### A.      Plaintiff's Original Complaint

Plaintiff initiated this action on May 31, 2007 as an individual case in which he alleged that Equifax reported to third parties derogatory and inaccurate statements and information relating to him, including, but not limited to, the bankruptcy record.  Original Complaint, Dkt. #1, ¶¶ 6-8.  He alleged that Equifax issued false and inaccurate credit reports to various persons and credit grantors.  *Id.* at. ¶ 9.

Plaintiff's original Complaint also alleged that Equifax's conduct caused him injuries, damage, and harm and, as a result, Equifax was liable to Plaintiff for statutory, actual, and punitive damages.  *Id.* at ¶ 22.  That Complaint sought recovery for both willful and negligent violations of the FCRA and for violation of 15 U.S.C. § 1681i(a) for failure to conduct a reasonable reinvestigation of his disputes.  *Id.* at ¶ 21.

### B.    Plaintiff's Amended Complaint

On September 28, 2007, Plaintiff amended his complaint and significantly narrowed his allegations and, therefore, this case.   *See* Amended Complaint, Dkt. #2.   The Amended Complaint does not seek actual damages, does not purport to state a claim against Equifax for allegedly reporting inaccurate information, does not allege a negligent violation of the FCRA, and does not seek to recover for a violation of § 1681i(a).   *Id.*   As Plaintiff testified, he is not suing Equifax for any issues related to the disputes he made with Equifax, but only the contents of the one letter that was attached to his Amended Complaint.   Chakejian Dep. I, 127:10-129:12.[1]   Plaintiff asserts that the involuntary bankruptcy incorrectly appeared on his credit report and that Equifax failed to remove it, but admits that he is not suing Equifax for purportedly failing to do so, despite being "upset" about it.   *Id.* at 80:8-81:3, 87:4-89:2.   Plaintiff testified that if Equifax had removed the bankruptcy from his credit file when he disputed it, the suit would not have been filed.   Chakejian Dep. I, 148:1-7.

Despite the claims in his Amended Complaint, Plaintiff testified that he was not in fact misled by Equifax's response letter; instead, he claims that he was misled when he was told on the phone that if he obtained a copy of the court order and sent it in, the item would be removed.   Chakejian Dep. I, 89:3-22.   In fact, Plaintiff went to the address that Equifax provided in its letter and obtained the public record.   *Id.* at 89:23-90:17.   Thus, it is undisputed that Equifax did not mislead Plaintiff as to the location of the source of the information.

---

[1]    The claims relating to Plaintiff's disputes will be barred by res judicata upon the adjudication of this case because they could have been asserted here (and, of course, were asserted in the original Complaint).  *See, e.g.*, *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 962-64 (3d Cir. 1991) (affirming dismissal); *Charter Oak Fire Ins. Co. v. Sumitomo Marine and Fire Ins. Co.*, 750 F.2d 267, 270-72 (3d Cir. 1984) (res judicata).

C.      **The Class Certification Phase**

Having abandoned his claims for actual damages, for negligent violations of the FCRA, for any violation of the reinvestigation provisions of the FCRA, and thus limiting this case to only a claim for an alleged willful violation of the FCRA, Plaintiff filed a class certification motion on August 18, 2008.  Dkt. #39.  On March 25, 2009, the Court certified a statewide class pursuant to Fed. R. Civ. P. 23(b)(3).  Dkt. #48.

On November 30, 2009, the Court granted Equifax's Motion to Modify the Scheduling Order, extending the date for Equifax to file a motion for summary judgment until after the opt-out period for the class.  Dkt. #71.  Notice to the class members was disseminated on January 4, 2010 and the opt-out deadline was February 3, 2010.  Dkt. #73.

## ARGUMENT

I.      **THE SUPREME COURT'S OPINION IN *SAFECO* CONTROLS THE ANALYSIS OF PLAINTIFF'S WILLFULNESS CLAIM.**

Plaintiff seeks recovery from Equifax under § 1681n of the FCRA.  That section provides that "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000, . . . and such amount of punitive damages as the court may allow."

In *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007), the Supreme Court held that, to prove willfulness, an FCRA plaintiff must prove, at a minimum, that the defendant acted recklessly, and cautioned that:

> a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

551 U.S. at 69.  The Court further stated that recklessness requires a finding that the defendant's reading of the FCRA was "objectively unreasonable," not merely erroneous.  *Id*. at 70.  In that case, the Court held that the absence of a clear statutory mandate, court opinion, or FTC comment to warn the defendant of its error (which was interpreting the FCRA as not requiring adverse action notices for first-time applicants) precluded a recklessness finding:

> This is not a case in which the business subject to the Act had the benefit of guidance from the courts of appeals or the Federal Trade Commission (FTC) that might have warned it away from the view it took.   Before these cases, no court of appeals had spoken on the issue, and no authoritative guidance has yet come from the FTC . . . .  Given this dearth of guidance and the less-than-pellucid statutory text, Safeco's reading was not objectively unreasonable, and so falls well short of raising the "unjustifiably high risk" of violating the statute necessary for reckless liability.

*Id*. (footnote and citation omitted).

Thus, based on the *Safeco* holding, whether a consumer reporting agency has acted in "willful noncompliance" with the FCRA under § 1681n is an objective assessment that only encompasses actions taken in reckless disregard of the FCRA's obligations.  *Id*. at 68-69; *see also Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 192 n.8 (3d Cir. 2009) ("'Willful' violations include reckless disregard of any requirement of the FCRA.") (citing *Safeco*) (affirming dismissal).  Where an interpretation of the FCRA has "a foundation in the statutory text . . . and a sufficiently convincing justification," that interpretation is not objectively unreasonable, even if the court reviewing the company's reading disagrees -- which occurred in *Safeco*, where the Supreme Court held that the defendant's interpretation of the FCRA provision at issue was erroneous, but not reckless.  551 U.S. at 69-70.  A reading will be unreasonable only when "the business subject to the [FCRA] had the benefit of guidance from the courts of appeals or the Federal Trade Commission . . . that might have warned it away from the view it took."  *Id.* at 70.  It is within this framework that Plaintiff's willfulness claim must be analyzed.

II.    **UNDER** *SAFECO***, EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S WILLFULNESS CLAIM.**

Applying the willfulness standard of *Safeco* as other federal appellate and district courts have done, the Court should conclude that Plaintiff's willfulness claim here cannot withstand summary judgment.  First, the FCRA does not require Equifax to identify the "furnisher of information" in its response letter where, as here, the consumer does not request it.  Second, to Equifax's knowledge, no federal court or the FTC has ever held that a public record vendor is a "furnisher" for purposes of the FCRA, and the statute itself does not provide a definition of that term.  Third, even if the Court could deem a public record vendor to be a "furnisher of information" for purposes of the FCRA, no federal court or the FTC has ever held, or otherwise warned Equifax, that the language of the letter in question somehow violates the FCRA.  For any of these three issues, for which there is a complete lack of statutory, judicial, and administrative guidance that would assist Equifax in interpreting its obligations under the FCRA, the principles of *Safeco* mandate the entry of summary judgment.

A.     **Equifax Did Not Willfully Violate the FCRA Where (1) It Was Not Required By The FCRA To Identify The Source Of The Record Because Plaintiff Did Not Request It And (2) Its Conclusion That A Public Record Vendor's Name Need Not Be Disclosed In A Description Of Reinvestigation Procedures Is Not Objectively Unreasonable.**

Plaintiff alleges that Equifax failed to comply with 15 U.S.C. § 1681i(a)(6), which provides:

> (A) In general
>
> A consumer reporting agency shall provide written notice to a consumer of the results of a reinvestigation under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency.

(B) Contents

As part of, or in addition to, the notice under subparagraph (A), a consumer reporting agency shall provide to a consumer in writing before the expiration of the 5-day period referred to in subparagraph (A)—

(i) a statement that the reinvestigation is completed;

(ii) a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation;

(iii) a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available;

(iv) a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information; and

(v) a notice that the consumer has the right to request under subsection (d) of this section that the consumer reporting agency furnish notifications under that subsection.

Plaintiff alleges that Equifax falsely advises consumers that it contacts the original source of the information, when, in fact, it contacts a private independent company -- its public record vendor -- whose use Equifax does not disclose to the consumer.  Amended Complaint, ¶ 14.  He claims that Equifax thereby willfully misrepresents its investigation activities because it fails to disclose the name of all "furnisher[s] . . . contacted."  *Id.*, ¶¶ 14, 15.  Those allegations are insufficient to establish a willfulness violation under *Safeco* because, first, Plaintiff did not request a description of procedures that would trigger an obligation for Equifax to disclose the identity of any "furnisher" consulted during Equifax's investigation and, second, even if Plaintiff had made such a request, omission of a public record vendor's name from a dispute resolution letter cannot constitute a willful violation of the FCRA because it is not objectively unreasonable

for Equifax to conclude that public record vendors are not "furnishers" whose identities must be disclosed on request under § 1681i(a)(6)(B)(iii).  Equifax's conclusion that it did not need to include the PRV's name in the dispute resolution letter thus cannot, under *Safeco*, constitute a willful violation of the FCRA.

### 1.     Plaintiff Did Not Request A Description Of Equifax's Procedures.

Pursuant to 15 U.S.C. § 1681i(a)(6)(B), Equifax was only required to provide Plaintiff "a notice that, *if requested by the consumer*, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher . . . ."  15 U.S.C. § 1681i(a)(6)(B)(iii) (emphasis added).  *See also Morris v. Trans Union LLC*, 420 F. Supp. 2d 733, 750 (S.D. Tex. 2006) (quoting subsection (iii); granting summary judgment), *aff'd*, 224 Fed. Appx. 415 (5th Cir. 2007).  Thus, Equifax was not required, in its initial response letter to Plaintiff's dispute, to provide the full description of its reinvestigation procedures or the name of the furnisher unless Plaintiff specifically requested a description of the procedures.  Thus, the statement that Plaintiff asserts was a misrepresentation of Equifax's procedures was not, in fact, required by the FCRA.

There is no basis for Plaintiff to maintain a willfulness claim against Equifax based on a letter that, under these circumstances, was not even required by the FCRA.  Indeed, it is undisputed that Plaintiff did not request a description of the procedures pursuant to subsection (iii).  *See* Chakejian Dep. I, 116:2-9, Ex. 6; Chakejian Dep. II, 5:15-6:20, Ex. 12; Fluellen Decl., ¶¶ 45-46.  Equifax being under no obligation to provide a description otherwise, it could not have willfully violated the FCRA in sending a letter to Plaintiff that, in essence, volunteered

information that Equifax otherwise was not required to provide.  The Court need go no further in

granting the motion for summary judgment.[2]

> ## 2. The FCRA Does Not Define The Term "Furnisher," And No Court Has Construed That Term To Include Public Record Vendors.

Even if Plaintiff could establish that he requested a description of procedures pursuant to

§ 1681i(a)(6)(B)(iii) that would have obligated Equifax to disclose the name of its "furnisher of

information," his willfulness claim remains infirm because Equifax's conclusion that a public

record vendor is not a "furnisher of information" under the FCRA (meaning that the name of the

PRV need not be included in a description of procedures) is not objectively unreasonable.  As

such, summary judgment on Plaintiff's willfulness claim should be granted on this alternative

basis.

> ### a. Section 1681i(a)(6)(B) Does Not Define The Term "Furnisher," And The Term Has Been Construed To Apply Only To Creditors And Lenders With Consumer Relationships, Not To Public Record Vendors.

As another federal court in Pennsylvania recently observed:  "the FCRA does not define

[the term] 'furnishers of information.'"  *Kibbie v. BP/Citibank*, 2009 WL 2950365 at *6 (M.D.

Pa. Sept. 9, 2009).  As the *Kibbie* court held, the term "furnishers" is "generally understood to

include various types of creditors, such as banks and other lenders, that provide credit

information about their customers to other entities that issue consumer reports about the

---

[2]    Regardless, it is undisputed that Equifax's letter provided Plaintiff with written notice of the results of its reinvestigation, by mail, that contained:  (i) a statement that the reinvestigation was completed; (ii) a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation; (iii) a description of the procedure used to determine the accuracy of the information; (iv) a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information; and (v) a notice that the consumer has the right to request that the consumer reporting agency furnish notifications under that subsection.  *See* Fluellen Decl., ¶ 22-23, 52-54; Amended Complaint, Ex. A.  The letter complied with the FCRA.  *See Baker v. Capital One Bank*, 2006 WL 2523440, at *10 (D. Ariz. Aug. 29, 2006) (granting summary judgment on description of procedures claim).

customers' credit worthiness." *Id.* (quoting *Ross v. Washington Mut. Bank*, 566 F. Supp. 2d 468, 475 n.1 (E.D.N.C. 2008)).

It is undisputed that Equifax's public record vendor is not a "creditor" and certainly is not a "bank" or "other lender" that generally is considered a "furnisher" for purposes of the FCRA. Accordingly, Equifax reasonably interpreted the term "furnisher" in § 1681i(a)(6)(B)(iii) not to include its public record vendor. At a minimum, it did not willfully violate the FCRA in so doing. *See Love-Sawyer v. Equifax, Inc.*, 2009 WL 3169679, at *3 (M.D. Tenn. Sept. 28, 2009) (firm of Mann Bracken not a "furnisher of information" under FCRA; motion to dismiss FCRA claim granted); *Abdrabboh v. Capital One Bank*, 2006 WL 3004084 at *9 (E.D. Mich. Oct. 20, 2006) (campus administration employees likely not "furnishers," though FCRA case dismissed on other grounds).

No court, to Equifax's or LexisNexis's knowledge, has ever held that a public record vendor is a "furnisher" under the FCRA. *See* Fluellen Decl., ¶ 20; Johnson Decl., ¶ 16. Indeed, the reported cases discussing "furnishers" agree with the *Kibbie* definition and construe the term "furnisher" to include only lenders and creditors. *See*, *e.g.*, *Krajewski v. American Honda Finance Corp.*, 557 F. Supp. 2d 596, 608-09 (E.D. Pa. 2008) (creditor); *see also Chiang v. MBNA*, 634 F. Supp. 2d 164, 167 (D. Mass. 2009) (creditor/lender); *Vazquez-Garcia v. Trans Union de Puerto Rico*, 222 F. Supp. 2d 150, 154 (D.P.R. 2002) (creditor); *Carney v. Experian Information Solutions, Inc.*, 57 F. Supp. 2d 496, 501 (W.D. Tenn. 1999) (creditor).

The lender/creditor limitation arises because the term "furnisher" applies only to "an entity which transmits *information concerning a particular debt owed by a particular consumer to consumer reporting agencies.*" *Vazquez-Garcia*, 222 F. Supp. 2d at 154 n.5 (emphasis added); *see also Chiang*, 634 F. Supp. 2d at 167 (same). Decisions of this Court are in accord. *See*

*Donahue v. C. Blosenski Disposal Co.*, 2006 WL 3423888, at *1 (E.D. Pa. Nov. 28, 2006) ("furnisher" defined as "an entity which transmits information concerning a particular debt owed by a consumer to a consumer reporting agency").  In other words, the term "furnisher" does not apply to mere conduits of public information, and Equifax did not act objectively unreasonably in interpreting the term in that manner.

With no definition of the term "furnisher" supplied by the FCRA, and courts consistently defining that term to include only creditors and lenders that supply consumer data to consumer reporting agencies, Equifax could reasonably interpret the absence of the definition in subsection (iii) not to include its public record vendor.  In any event, it was not objectively unreasonable for Equifax to do so.

> **b.** **Other Sections Of The FCRA, While Not Defining "Furnisher," Also Suggest That The Term Does Not Include Public Record Vendors.**

Furthermore, other sections of the FCRA that address the duties of "furnishers," while not at issue in this case, also support the proposition that the term does not include public record vendors.  For example, § 1681s-2, which governs the responsibilities of furnishers of information to consumer reporting agencies, does not define the term "furnisher."  A close reading of § 1681s-2, however, makes clear that a public record vendor would not be considered a "furnisher."  Section 1681s-2(a)(2), titled "Duty to Correct and Update Information," states that a person who "regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies *about the person's transactions or experiences with any consumer* and has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination . . . ."  (Emphasis added.)

Thus, § 1681s-2 contemplates that the "furnisher" is a person that has been involved in a transaction or other experience with the consumer. The public record vendor conducts no transactions and has no experience with individual consumers about whom Equifax has prepared consumer reports that include public record information. *See* Johnson Decl., ¶ 8. The public record information that the PRV transmits to Equifax in bulk does not relate in any way to its transactions or experiences with any consumer. *Id.* Neither the public record vendor nor its employees or independent contractors have any specific or firsthand knowledge of the events underlying the information contained in the public records collected and transmitted by the vendor. *Id.* Because the public record vendor is not in privity with the consumer, it logically would not be included under § 1681s-2's requirements. Neither Equifax nor LexisNexis is aware of any case that designated or characterized a public record vendor as a "furnisher" under the FCRA, let alone held a public record vendor liable for a violation of § 1681s-2. Fluellen Decl., ¶ 20; Johnson Decl., ¶¶ 15-16. There is no reason for this Court to be the first.

> **c.** **Disclosure Of The Identity Of A Public Record Vendor Would Not Further The End To Which Section 1681i(a)(6)(B)(iii) Is Directed.**

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Nunnally v. Equifax Information Services*, LLC, 451 F.3d 768, 773 (11th Cir. 2006) (citing *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 132 (2000)). Here, the Court should consider why Equifax should be required to disclose the identity of a "furnisher" in light of an overall statutory scheme that does not define that term. Section 1681i(a)(6)(B) states that a consumer may obtain from a consumer reporting agency a description of the reinvestigation process used and the name and address of any furnisher contacted for the purposes of that investigation. Nothing in the FCRA suggests that the purpose of the section is to have Equifax identify each of its agents

involved in the process.  The public record vendor, which merely accesses public records as Equifax's agent, *see* Johnson Decl., ¶¶ 3-5, 13; DeGrace Decl., ¶ 15; Fluellen Decl., ¶¶ 29-30; Fluellen Dep., 40:4-17, would have no additional information to assist the consumer, and no power to change the contents of a public record.  If a court's publicly available information is incorrect (i.e., the court shows as unsatisfied a judgment that the consumer has, in fact, satisfied), the public record vendor can do nothing for him.  It is the courthouse, rather, that the consumer must visit to have the public record corrected, much as the consumer would need to contact a credit card issuer if the issuer incorrectly reported a delinquency on an account maintained with the consumer.  It is with the court that a consumer must resolve a public records dispute and obtain information -- and that is exactly what Plaintiff did here.  *See* Fluellen Decl., ¶¶ 28, 54; Fluellen Dep., 45:3-23, 46:16-47:10; Chakejian Dep. II, 7:5-8:16.

Equifax collects public record information from the source and, as such, there is no "furnisher" of such information.  *See* Fluellen Decl., ¶¶ 7-8, 13, 15; DeGrace Decl., ¶¶ 6, 7, 10; Johnson Decl., ¶¶ 3, 5, 7, 13.  The public record vendor acts as Equifax's agent in collecting the information.  DeGrace Decl., ¶ 4; Fluellen Decl., ¶ 15; DeGrace Dep., 23:9-19; Johnson Decl., ¶ 6.  The public record vendor merely acts as a conduit between the information source -- the courts or other official locations where public records are reported -- and Equifax, much as would be a bicycle messenger who, at Equifax's request, picked up a copy of a judgment at a court clerk's office.  Johnson Decl., ¶ 13.  If it so chose, Equifax could send an employee to a courthouse to check court records, as it did historically, or it could use another conduit -- such as an internet service provider if the court has a public website -- to obtain the same information transmitted by the public record vendor.  *Id*.; DeGrace Decl., ¶ 9.

Equifax did not misrepresent the source of its public record information, as Plaintiff contends. It is undisputed that Equifax contacted the Eastern District of Pennsylvania Court, through its agent, and verified the disputed information. *See* Fluellen Decl., ¶¶ 49-51, 54; Fluellen Dep., 67:11-24. The disclosure of the identity of the agent is neither necessary nor required by the FCRA, and would serve no purpose other than to confuse consumers, as the public record vendors are not the sources of the information that the consumers may seek, i.e., the actual public record itself, which is in the hands of the court clerks. *See* Johnson Decl., ¶¶ 3, 5, 9. Accordingly, Plaintiff's assertion that Equifax violated the FCRA by not disclosing the identity of its public record vendor is unfounded and certainly does not rise to the level of a willful violation of the FCRA.

> **d.    As A Matter Of Law, Plaintiff Cannot Meet The *Safeco* Standard As It Applies To A Public Record Vendor Being A "Furnisher" For Purposes Of The FCRA.**

The question of whether, for purposes of the FCRA, Equifax's conclusion that a public record vendor is not a "furnisher" was "objectively unreasonable" is a paradigmatic case for summary judgment under *Safeco*. Because Equifax's conclusion is correct, there can be no FCRA violation, willful or otherwise.

But even if Equifax were incorrect by not classifying public record vendors as "furnishers," its classification was not objectively unreasonable, and thus did not constitute a willful violation of the FCRA. First, the FCRA itself does not define "furnisher," thus Equifax could not have been warned off its non-"furnisher" conclusion. Second, no opinion from a federal court or the FTC has ever defined or otherwise construed that term to include a public record vendor; to the contrary, the courts uniformly have limited the definition of "furnishers" to creditors and lenders -- entities far different than a public record vendor.

With the only "guidance" from the courts suggesting that Equifax's interpretation of "furnishers" as not including its public record vendor was the correct one, Equifax could not have willfully violated the FCRA as a matter of law by not disclosing its public record vendor in the letter it sent to Plaintiff. *See Harper v. Trans Union, LLC*, 2009 WL 415940, at *3 (E.D. Pa. Feb. 19, 2009) (granting summary judgment where "[n]o FTC action or appellate court decision existed at the time to warn [defendants] that their procedure . . . [was] not reasonable"); *see also Weitz v. Wagner*, 2009 WL 4280284, at *5 (E.D.N.Y. Nov. 24, 2009) (judgment for FCRA defendant where "the defendant did not have 'the benefit of guidance from the courts of appeals' or the Federal Trade Commission that might have warned [her] away" from her interpretation of the FCRA (quoting *Safeco*, 551 U.S. at 70); *Godby v. Wells Fargo Bank*, 599 F. Supp. 2d 934, 944 (S.D. Ohio 2008) (granting summary judgment on a willfulness claim where "there is no reported case" discussing the FCRA provision at issue and "Defendant did not have the benefit of guidance from the courts of appeals") (additional quotations omitted).  Accordingly, Equifax did not willfully violate the FCRA as a matter of law by not disclosing its public record vendor in the letter it sent to Plaintiff.  The Court should, therefore, grant Equifax's motion for summary judgment.

    **B.**    **Even If The Public Record Vendor Could Be Deemed A "Furnisher," Equifax Did Not Willfully Violate The FCRA By Allegedly Not Identifying The Vendor In Its Response Letter.**

The Court need not reach the issue concerning the substance of Equifax's response letter to Plaintiff because, as detailed above, Plaintiff did not request a description of procedures that would trigger Equifax's obligation to disclose "any furnisher" and, even if he had done so, Equifax's public record vendor is not a "furnisher" for purposes of the FCRA.  Nevertheless, if the Court reaches the issue, *Safeco* once again warrants the entry of summary judgment.  Indeed, nothing in the FCRA sets out with any precision the specific language Equifax must use in the

26

type of letter Plaintiff challenges here, nor has any court or the FTC provided any guidance on the specifics of such letters.  Equifax's interpretation of its requirements was not objectively unreasonable and, consequently, did not willfully violate the FCRA as a matter of law.[3]

> **1.      Equifax's Interpretation Of The FCRA With Regard To Response Letters Under Section 1681i(a)(6) Was Not Objectively Unreasonable.**

To say that the relevant FCRA provision is "less than pellucid" is an understatement. Indeed, § 1681i(a)(6) is completely silent on the following issues relevant to the Court's assessment of Plaintiff's willfulness claim:

(1)      No instruction or guidance on the precise language to be used in response letters;

(2)      No definition of the term "furnisher";

(3)      No requirement that a consumer reporting agency disclose the identity of its public record vendor.

Faced with such definitional absences and ambiguities, it was not objectively unreasonable for Equifax to interpret § 1681i(a)(6), first, as construing the term "furnisher" as not including public record vendors and, second, as allowing Equifax to send response letters that do not disclose the existence or identity of a public record vendor in any event.  *See Harper v. Trans Union, LLC*, 2009 WL 415940, at *3 (E.D. Pa. Feb. 19, 2009) ("[U]nder the § 1681n willfulness standard defendants' beliefs that their procedures were reasonable and accurate under the law are not

---

[3]      As one federal court recently held, "as recent decisions of federal courts of appeals have confirmed, the question of whether [the consumer reporting agency's] reading of the FCRA was so clearly wrong as to be 'objectively unreasonable' is appropriately decided on summary judgment."  *Harris v. Experian Information Solutions, Inc.*, Case No. 6:06-cv-1808-GRA (D.S.C. Slip Op. June 30, 2009) (copy attached as Ex. K) (citing *Levine v. World Fin. Network Bank*, 554 F.3d 1314, 1317-19 (11th Cir. 2009), and *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 725-27 (7th Cir. 2008).

objectively unreasonable; therefore, defendants are entitled to summary judgment on plaintiff's willfulness claim.").

Indeed, the Supreme Court's adoption of a standard requiring a plaintiff to show a "high risk of harm, objectively assessed" (*Safeco*, 551 U.S. at 69) precludes any finding of willfulness here because Plaintiff was not "harm[ed]" at all -- he does not claim any actual damages based on Equifax's allegedly misleading letter.  In fact, Plaintiff testified that he *was not* misled by the part of the letter advising him that Equifax had contacted the source of the public record; Plaintiff merely went to "the source" -- the courthouse -- and retrieved a copy of the order invalidating the bankruptcy that had wrongly been filed against him.  Chakejian Dep. I 89:3-90:5.[4]

Thus, there was no "high risk of harm" in Equifax's reading of the FCRA given the complete lack of harm to Plaintiff.  Indeed, Plaintiff himself testified that he had no knowledge that Equifax had acted recklessly toward him, *see* Chakejian Dep. II, 64:12-20, and such testimony alone has been sufficient for this Court and others to grant summary judgment on willfulness claims.  *See*, *e.g.*, *Perez v. Trans Union, LLC*, 526 F. Supp. 2d 504, 510 (E.D. Pa. 2007) (granting summary judgment on willfulness claim where "Plaintiff stated in his deposition that he did not believe anyone at [defendant] acted with malice or intent to harm him"); *see also Pinson v. Equifax Credit Info. Services, Inc.*, 2008 WL 2329137, at *4 (N.D. Okl. June 2, 2008) (granting summary judgment on willfulness claim, court noting that plaintiffs "testified in their

---

[4]      To be clear, Plaintiff testified that he *was* misled on the separate basis that Equifax allegedly told him that it would remove the bankruptcy from his file if he provided a certified copy of the order (Chakejian Dep. I, 89:3-6), which supposedly did not happen -- but that is one of the claims that Plaintiff has abandoned by whittling his case down to the narrow claim asserted here, and that claim (for Plaintiff and for all class members) will be barred once this case goes to final judgment. *See Lubrizol*, 929 F.2d at 962-64; *Charter Oak*, 750 F.2d at 270-72.

depositions that they had no knowledge that [defendant] had acted in willful disregard of their rights"), *aff'd*, 316 Fed. Appx. 744 (10th Cir. 2009).

The purpose of identifying the "furnisher" in § 1681i is to provide the consumer with the information necessary for them to go to the source of the information should they wish to investigate the disputed item on their own.  Providing consumers the identity of the public record vendor would have the opposite effect.  The public record vendor does not have any information, but is only a conduit of information, standing in Equifax's shoes in going to courthouses around the country to obtain public record information.  It is not objectively unreasonable for Equifax, therefore, to interpret the vague language of the FCRA to exclude the public record vendor from its response letters and instead direct consumers to the courts that hold the public records.

        **2.**      **There Is A Complete Absence Of Judicial And Administrative Guidance On The Critical Issues In This Case.**

              **a.**      **The Issues In This Case Are Of "First Impression," As Plaintiff's Expert Testified.**

There has been absolutely no guidance by the FTC or any federal court regarding the need for a consumer reporting agency to identify its public record vendor in order to comply with § 1681i(a).  There has never been, to Equifax's knowledge, a finding by a court or any guidance by the FTC that the language Plaintiff challenges here is misleading so as to violate § 1681i(a)(6).  *See* Fluellen Decl., ¶¶ 36-41.  As one court recently commented, "[n]o court has addressed explicitly the substantive requirements of . . . § 1681i(a)(6)(B)(iii)."  *Carvalho v. Equifax Information Services, LLC*, 588 F. Supp. 2d 1089, 1099 (N.D. Cal. 2008) (granting summary judgment).  In fact, before this case, Equifax had never received a complaint from a consumer, the FTC, or any government body that its letter to consumers misrepresented the source of its public records or violated the FCRA.  *See* Fluellen Decl., ¶¶ 36-41; Perling Dep., 33:7-34:17.

Consistent with that lack of judicial and administrative guidance, Plaintiff's own purported expert testified -- on multiple occasions during his deposition -- that the narrow issue in this case is one of first impression. For example, he gave the following testimony when asked about the conclusions contained within his opinions:

> Q.     Are you aware of any studies that relate to your conclusions?
>
> A.     No. This is pretty much a matter of first impression.

Hendricks Dep., 165:18-21. More specifically, he testified that he was unaware that any judge or jury has ever warned Equifax that the contents of its letter might violate the FCRA:

> Q.     With the -- as you say it, the contents of the letter --
>
> A.     -- describing the process --
>
> Q.     -- misleading over the process, you're not aware of any judge or jury instructing Equifax that the letter it sends to consumer -- consumers misleads them as to the process?
>
> A.     Right. No. Because I think this is a case of first impression.

*Id.*, 202:3-12. The witness rendered the same testimony with regard to whether Equifax's letter (as opposed to the letters utilized by other consumer reporting agencies) was the "industry standard":

> Q.     But there has been no determination by anybody that one letter is an industry standard and the other is not, correct?
>
> A.     Right. That's a case of first impression.

*Id.*, 264:5-10.

In short, it is undisputed -- as confirmed by Plaintiff's own purported expert -- that no court, jury, administrative agency, or any other authoritative source has provided any guidance to Equifax (or any other consumer reporting agency) as to whether the contents of its letters sent to consumers pursuant to § 1681i(a)(6) violate the FCRA. Under *Safeco*, that absence is dispositive of a willfulness claim under the FCRA.

> **b.**     **Cases From This Court Consistently Grant Summary Judgment On Willfulness Claims Where, As Here, There Has Been An Absence Of Judicial Or Administrative Guidance On The Issue(s) In The Case.**

The judges on this Court consistently have granted summary judgment to willfulness claims where, as here, there is an absence of judicial or other guidance on the critical issues underlying the willfulness claim.  There is no need for the Court to deviate from the analysis from these other cases.

For example, in *Harper v. Trans Union*, 2009 WL 415940, at *1 (E.D. Pa. Feb. 19, 2009), the Court granted summary judgment in a case that, like this one, involved an allegedly erroneously reported bankruptcy.  Plaintiff filed a class action against the consumer reporting agencies alleging that they violated the FCRA by including a bankruptcy comment on tradelines on which the plaintiff and members of the putative class were co-account holders and did not file the bankruptcy related to the tradeline.  The Court granted summary judgment on the willfulness claim, finding that the defendants' reading of the FCRA to permit inclusion of the bankruptcy remark was not objectively unreasonable.  *Id.* at *3.  "No FTC action or appellate court decision existed at the time to warn CRAs that their procedure of including the bankruptcy remark were not reasonable or that inclusion of the bankruptcy remark would be inaccurate."  Thus, the Court granted "defendants' motions for summary judgment on the sole issue of willful noncompliance with the FCRA."  *Id.* at *4.

Similarly, in *Perez v. Trans Union LLC*, 526 F. Supp. 2d 504 (E.D. Pa. 2007), the Court granted summary judgment on a willfulness claim asserted under the FCRA.  In so holding, the Court held:  "The reasonable action to take under the circumstances is not statutorily plain, or is at least debatable.  No judicial authority has ruled what credit reporting agencies like [the defendant] must do under the circumstances."  526 F. Supp. 2d at 510; *see also Krajewski v.*

31

*American Honda Finance Corp.*, 557 F. Supp. 2d 596, 618 (E.D. Pa. 2008) (granting summary judgment on willfulness claim where "decisions of federal appellate courts and FTC guidance support the conclusion that [consumer reporting agency's] interpretation of the FCRA's requirements were [sic] not objectively unreasonable" and "[p]laintiff has pointed to no evidence that [agency] acted in willful noncompliance in interpreting the FCRA and in adopting procedures pursuant to the FCRA").

While not arising under the FCRA, the Court's recent opinion in *Pichler v. UNITE*, 646 F. Supp. 2d 759 (E.D. Pa. 2009), which cited *Safeco* and applied a similar standard, demonstrates the reasons why legal guidance is a necessary prerequisite upon which to send a punitive damages claim to a jury.  That case, brought under the Driver's Privacy Protection Act, involved allegations of "tagging."   The Court entered summary judgment in plaintiffs' favor in April 2006, *see Pichler v. UNITE*, 446 F. Supp. 2d 353 (E.D. Pa. 2006), which the Third Circuit affirmed but remanded to consider whether summary judgment was appropriate on the issue of punitive damages.  *See Pichler v. UNITE*, 542 F.3d 380 (3d Cir. 2008).  Addressing that issue on remand, the Court held that "the plaintiffs here would be entitled to a jury trial on punitive damages only if they could show that UNITE acted in reckless disregard of the law."  646 F. Supp. 2d at 764 (citing *Safeco*, 551 U.S. at 57).

The Court granted summary judgment in the defendant's favor on the issue of punitive damages.  The Court noted that "[t]he liability issues in this case were -- every one of them -- all questions of first impression."  646 F. Supp. 2d at 765.  As a result, the Court held, "[o]ne cannot be on notice that one's actions are illegal and act in reckless disregard of a statute that courts have never construed on a reasonably debatable point."  *Id.* at 766.  The Court explained, in language equally applicable here:

32

> To permit a jury to consider the question of punitive damages would allow a jury to find UNITE acted with reckless disregard of the law before UNITE could have been on notice that its activities were illegal.  Such a result would defy common sense.  It would also deter defendants wishing to test and clarify the law through litigation from making that legitimate choice for fear that their actions would open them up to punitive damages if they lost a test case under a new or unconstrued statute.

*Id.*

The Court's decisions in *Harper*, *Perez*, *Krajewski*, and *Pichler* illustrate the importance of prior judicial or administrative guidance on the issue in the case in addressing the willfulness claim.  In this case, as in those prior cases, there is a complete absence of any guidance from judges, juries, or the FTC concerning whether Equifax's letter to consumers under § 1681i(a)(6) violates or does not violate the FCRA.  Consequently, Plaintiff cannot demonstrate the heavy burden imposed by *Safeco* for establishing willfulness.  Accordingly, the Court should grant Equifax's motion for summary judgment.

> **c.      Federal Appellate Courts Have Applied *Safeco* To Affirm Grants Of Summary Judgment Due To Plaintiffs' Failure To Satisfy The *Safeco* Standard.**

Similarly, federal courts of appeals, in the nearly three years since *Safeco*, consistently have affirmed district courts' grants of summary judgment on the basis that the plaintiffs were unable to satisfy the heavy willfulness burden imposed by *Safeco*.  For example, in *Levine v. World Financial Network Nat'l Bank*, 554 F.3d 1314 (11th Cir. 2009), the Eleventh Circuit affirmed the grant of summary judgment in favor of the consumer reporting agency notwithstanding evidence that, in that case, the agency suspected that its conduct violated the FCRA.  The court held, however, that even evidence that the consumer reporting agency had actually believed that its conduct violated the FCRA was immaterial to *Safeco*'s objective test:

> Levine argues that Experian recklessly violated the Act because its records prove that Experian read the Act to prohibit the sale of reports on consumers whose accounts were closed, but this argument fails.  *Safeco* makes clear that evidence

of subjective bad faith cannot support "a willfulness finding . . . when the company's reading of the statute is objective reasonable." 127 S. Ct. at 2216 & n.20. The interpretation of the Act that agencies may sell reports for closed accounts was objectively reasonable, and Safeco instructs us not to consider the subjective intent of Experian.

*Id.* at 1319.

Likewise, in *Murray v. New Cingular Wireless Services, Inc.*, 523 F.3d 719 (7th Cir. 2008), the Seventh Circuit applied *Safeco* to a case involving similar facts and arguments to those in this case and affirmed the grant of summary judgment on a claim of willful violation of the FCRA. In *New Cingular*, the district court analyzed the FCRA's requirement that consumer credit solicitations include a "clear and conspicuous statement" outlining certain consumer rights. *See Murray v. New Cingular Wireless Services, Inc*., 432 F. Supp. 2d 788 (N.D. Ill. 2006). The plaintiffs in *New Cingular* argued that the defendant's solicitation willfully violated the FCRA because it printed the required consumer statement in unbolded, 6-point font, which they argued was not "clear and conspicuous," especially when compared to surrounding text that used larger text, colors, and other methods of emphasis. *Id.* at 793. The district court agreed that the use of 6-point font violated the "clear and conspicuous" requirement. *Id.*

Despite acknowledging the violation of the FCRA, the district court nevertheless rejected the plaintiffs' contention that the violation was willful. *Id.* The court observed that the FCRA "does not define the term 'clear and conspicuous,'" and does not "mandate specific guidelines that the disclosure must meet in terms of text size or font." *Id.* at 794 (quoting *Cole v. U.S. Capital,* 389 F.3d 719, 729 (7th Cir. 2004)). Further, the court noted that there had been "little case law interpreting the term" at the time New Cingular sent the solicitations. *Id.* Since New Cingular did not have clear "notice that its actions might be wrongful," the district court held that

it did not willfully violate the FCRA through its mailings and, therefore, granted New Cingular's motion for summary judgment. *Id.*

On appeal, the Seventh Circuit agreed that New Cingular had not acted willfully and affirmed the grant of summary judgment. *See New Cingular*, 523 F.3d at 724-26. The court found that even if New Cingular's reading of the statute was "careless," it was not reckless under *Safeco* sufficient to give rise to a fact question on willfulness:

> New Cingular's reading of the Act was mistaken, but if the error was careless it did not create a risk substantially above the risk usually associated with careless readings. Because the statute does not define "conspicuous," and the FTC had not issued its guidance, where was a company to turn?

*Id.* at 726. The court concluded that it was not reckless for New Cingular to read the FCRA "as authorizing its approach." *Id.* at 727. Thus, while "the disclosure required by 15 U.S.C. §1681m(d) was not conspicuous, New Cingular did not violate FCRA because it was not reckless." *Id.* The court, therefore, affirmed the grant of summary judgment to New Cingular.

Other appellate courts have likewise consistently affirmed judgments as a matter of law on willfulness claims. *See also Robinson v. Equifax Information Services, LLC*, 560 F.3d 235, 241 n.3 (4th Cir. 2009) (affirming judgment as a matter of law with respect to punitive damages sought under FCRA); *Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial Svcs., Inc.*, 537 F.3d 1184, 1192-94 (10th Cir. 2008) (affirming judgment as a matter of law on FCRA willfulness claim); *Murray v. GMAC Mortgage Corp.,* 274 Fed. Appx. 489 (7th Cir. 2008) (affirming summary judgment on FCRA willfulness claim). Those decisions further support the grant of summary judgment here.

> **d.      Other District Courts Have Entered Summary Judgment On FCRA Willfulness Claims Where, As Here, There Is No Evidence Of Recklessness And An Absence Of Judicial And FTC Guidance.**

The decisions of this Court and the federal courts of appeals are buttressed by numerous

opinions from other district courts granting summary judgment to willfulness claims asserted under the FCRA. Notably, in *Harris v. Experian Information Solutions, Inc.*, Case No.: 06-cv-1808-GRA (D.S.C. June 30, 2009, slip opinion attached as Ex. K), the court granted summary judgment to the consumer reporting agency in a class action that, like this one, asserted no actual damages on behalf of any class member. The plaintiff in *Harris* alleged that the agency violated the FCRA by failing to report credit limit data on credit card accounts supplied by Capital One. *Id.* at 1.

Addressing plaintiff's willfulness claim, the court held that plaintiff was unable, as a matter of law, to establish that the consumer reporting agencies acted willfully. *Id.* at 14. The court stated that plaintiff must demonstrate that "defendant's action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* Further, the court held that "[w]hether a defendant's reading of the FCRA is unreasonable is an objective question that must be decided as a matter of law, without regard to whatever the defendant's subjective intent may have been." *Id.* at 14-15.

Applying the *Safeco* test, the court first held that the CRA's interpretation of the FCRA did not contravene "pellucid" statutory text. *Id.* The court then found that plaintiff pointed to no guidance from the FTC and no decision by a federal appellate court imposing liability for either a non-misleading omission from a credit report of for failure to force a furnisher to provide the credit limit on an account. *Id.* "Under *Safeco*," the court stated, "that is the end of the matter." *Id.*

A number of other district courts have applied *Safeco* in a similar fashion and granted summary judgment. *See*, *e.g.*, *Weitz*, 2009 WL 4280284, at *5 (granting summary judgment

where "the defendant did not have 'the benefit of guidance from the courts of appeals of the Federal Trade Commission that might have warned [her] away'" from her interpretation of the FCRA) (quoting *Safeco*, 551 U.S. at 70); *Konter v. CSC Credit Services, Inc.*, 606 F. Supp. 960, 970-972 (W.D. Wis. 2009) ("At worse [sic], defendant's reading [of the FCRA provision at issue] was careless and its violation negligent.  It cannot be characterized as reckless.") (granting summary judgment); *Zimmerman v. Bank of America*, 2009 WL 418606, at *4 (N.D. Miss. Feb. 19, 2009) (summary judgment granted as to statutory and punitive damages, finding that plaintiff failed to offer proof that defendant acted willfully or with reckless disregard); *Birmingham v. Equifax, Inc.*, 2009 WL 194985, at *2 (D. Utah Jan. 26, 2009) (summary judgment granted on plaintiff's claim for punitive damages because plaintiff failed to provide evidence that defendant acted willfully or with reckless disregard of plaintiff's rights); *Howard v. Wells Fargo Fin. Acceptance*, 2008 WL 5115049, at *4 (N.D. Cal. Dec. 4, 2008) (claim for punitive damages failed where plaintiff did not show that it was highly probable that harm would follow or that the risk of harm was substantially greater than the risk associated with actions that were merely careless); *Broessel v. Triad Guaranty Ins. Corp.*, 2007 WL 2155691 at *3 (W.D. Ky. July 25, 2007) (granting defendant summary judgment on plaintiff's punitive damages claim because defendant did not willfully violate the FCRA under *Safeco*); *Klutho v. Home Loan Ctr., Inc.*, 2007 WL 4191973 at *3 (E.D. Mo. Nov. 21, 2007) (granting defendant summary judgment on plaintiff's punitive damages claim where defendant's actions did not meet the definition of "willfulness" under *Safeco*).

## CONCLUSION

For the reasons set forth herein and in its memorandum in support of its motion for summary judgment, Equifax respectfully requests that its motion be granted.

37

Respectfully submitted March 5, 2010.

EQUIFAX INFORMATION SERVICES LLC,

By: **/s/Lewis P. Perling**

One of its Attorneys
Barry Goheen, Esq.
Lewis P. Perling, Esq.
King & Spalding LLP
1180 Peachtree Street N.E.
Atlanta, GA  30309-3521
(404) 572-4600
Fax (404) 572-5100

Catherine Olanich Raymond, Esq.
Christie, Pabarue, Mortensen and
Young, A Professional Corporation
1880 JFK Boulevard - 10th Floor
Philadelphia, PA  19103
(215) 587-1600

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a true and correct copy of the foregoing

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT via ECF to:

> James A. Francis, Esq.
> Mark D. Mailman, Esq.
> John Soumilas, Esq.
> Michael J. Szymborski, Esq.
> Francis & Mailman, PC
> Land Title Building, 19th Floor
> 100 S. Broad Street
> Philadelphia, PA 19110
>
> David A. Searles
> Donovan Searles, LLC
> 1845 Walnut Street, Suite 1100
> Philadelphia, PA 19103
> *Attorneys for Plaintiff*

Dated: March 5, 2010.


**/s/Lewis P. Perling**