# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD CHAKEJIAN,                               )
                                                 )
         Plaintiff,                      )  Civil Action No.  07-2211
                                                 )
v.                                               )
                                                 )
EQUIFAX INFORMATION SERVICES LLC,                )
                                                 )
         Defendant.                      )

## DECLARATION OF ALICIA FLUELLEN IN SUPPORT OF DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S MOTION FOR SUMMARY JUDGMENT

I, Alicia Fluellen, hereby declare under penalty of perjury that the following is true and correct:

1.     My name is Alicia Fluellen.  I am over 21 years of age and I am competent to testify as to the matters stated herein.  I am the Director of Customer Care for Equifax Information Services LLC ("Equifax") and have authority to submit this declaration on its behalf.

2.     I have personal knowledge of the facts herein stated.

3.     Equifax is a consumer reporting agency ("CRA") as defined by the Fair Credit Reporting Act.  Equifax gathers information from various sources, including credit card companies, mortgage companies, collection agencies, and court records, to create credit files on more than 200 million consumers in the United States.

4.     While the majority of credit report items are accounts that a consumer has opened with a lender, such as credit cards, automobile or other installment loans, or mortgages, information about a consumer's transactions or experiences with lenders alone does not present a complete credit profile of the consumer.

5.   Thus, where Equifax can associate a civil judgment, bankruptcy, or lien with a consumer, it will include that public record information in its credit files as well.

6.   Unlike consumer account information, judgment, bankruptcy, and lien information is not regularly supplied to Equifax by entities that are themselves the prime users of credit reports.

7.   Public record information is not published to consumer reporting agencies as is, for instance, monthly uploads from credit card companies containing current information on their active accounts.

8.   Therefore, if Equifax wants to include public record information in its credit reports, it must retrieve the data from the courthouses and clerks' offices.

9.   Equifax maintains detailed procedures for the investigation of a dispute regarding information included on a consumer's credit file.  Upon receipt of such a dispute, Equifax applies those procedures to verify the information obtained from the source.  Equifax contacts the original source to check the disputed information.  Information that cannot be verified is suppressed so that it does not reappear even if the source continues to send the same data.

10.   Upon receipt of a dispute, Equifax first reviews and considers the relevant information that the consumer submits.  If that initial review does not resolve the issue, Equifax then investigates by going to the source of the information.

11.   Equifax generally sends furnishers the request for a reinvestigation via e-OSCAR, a web-based, automated system that allows a consumer reporting agency to route automated consumer dispute verification forms to data furnishers.

12.   If the dispute relates to a tradeline, Equifax contacts the furnisher of the information, which is the creditor or collection company that reported it to Equifax.

13.     When a consumer disputes public record information appearing on his or her file, there is no furnisher to contact.

14.     Equifax instead goes back to the court, through its agent, the PRV.

15.     The PRV goes to the original source of the information (generally the courthouse or docket) on Equifax's behalf, collects information, and reports it to Equifax.

16.     The PRV does not conduct an investigation or analysis of the disputed public record, but only gathers the information related to the item and reports back to Equifax.

17.     The PRV does not use the e-OSCAR system that is used by furnishers, but instead transmits its information to Equifax via a different electronic system.

18.     The term "furnisher" or "furnisher of information" is not defined by the FCRA.

19.     Given the absence of such a definition, Equifax has construed the term "furnisher" to mean a company, such as a bank or lender, that provides data to the CRAs regarding its transactions and experiences with consumers.

20.     Equifax is not aware of any court or the Federal Trade Commission ("FTC") construing the term "furnisher" to include a public records vendor.

21.     Equifax does not consider its PRV to be a "furnisher of information" for purposes of complying with its obligations under the FCRA.

22.     Upon completion of a reinvestigation, Equifax sends the consumer a letter that is written specifically to comply with the requirements of the FCRA.

23.     The response letter includes the results of the reinvestigation and a description of the procedures used to determine the accuracy/completeness of the information, including the name, address, and telephone number of the furnisher of the disputed information.

24.     The FCRA provision at issue, 15 U.S.C. § 1681i(a)(6)(B)(iii), does not require

Equifax to provide a description of the procedures used to determine the accuracy or completeness of the information in response to a consumer's dispute.

25.     Under subsection (iii), a consumer reporting agency is required to provide a description of the procedures only if the consumer requests it.

26.     Equifax provides a description of procedures even if not requested by the consumer as an additional service to its consumer.

27.     In the case of a disputed public record, there is no furnisher for Equifax to identify.

28.     Instead, in order to assist the consumer, Equifax identifies the source of the information by providing the court's name and address so that a consumer may obtain the public record if he or she wants.

29.     Because there is no "furnisher" of a public record, Equifax identifies the source of the information.

30.     The source of a judgment, lien, or bankruptcy is not the PRV, but is the court at which the public record is held.

31.     The FCRA does not mandate the language that Equifax must include in its response letters.

32.     The FCRA does not state that Equifax must identify its non-furnisher agents, such as its PRV, in its letters sent to consumers responding to their disputes.

33.     Equifax maintains contracts with other non-furnisher vendors that are involved in the reinvestigation process, including: its mail vendor, docufree, which processes incoming mail to Equifax; Sitel, which operates a call center to respond to incoming calls from consumers; and Direct Data Capture LLC, which processes consumer dispute verification responses from

furnishers.

34.    The FCRA does not state that Equifax must identify these vendors, which operate as Equifax's agents.

35.    Likewise, the Federal Trade Commission ("FTC") has not instructed Equifax what language must be included in a response letter.

36.    The FTC has not instructed Equifax that the language that it uses in its response letters is misleading, inaccurate, or violates the FCRA.

37.    The FTC has not instructed Equifax that it must or should identify its non-furnisher agents, such as its PRV, in its letters sent to consumers.

38.    Furthermore, no court in any jurisdiction, including a federal court of appeal, has held that the language in Equifax's response letters is misleading, inaccurate, or violates the FCRA, or that Equifax should identify its PRV, or other agents, in response letters.

39.    No court has held that the language in Equifax's response letters is misleading, inaccurate, or violates the FCRA, or that Equifax should identify its PRV in response letters.

40.    No jury has rendered a verdict in a case against Equifax in which the consumer alleged that the language in Equifax's letter violated the FCRA or misstated Equifax's reinvestigation procedures.

41.    Prior to this case, Equifax is not aware of any prior allegation in any lawsuit that the language contained in the letter at issue in this case violated the FCRA, let alone that the language actually violates the FCRA.

42.    The use of a PRV is standard practice in the industry, yet neither of the other major consumer reporting agencies identifies its PRV in response to public record disputes.

43.    Included in Equifax's database is a credit file on the Plaintiff, Richard Chakejian.

44.     In December 2006, Equifax's PRV provided information regarding a Chapter 7 bankruptcy filed in the United States Bankruptcy Court for the Eastern District of Pennsylvania. The PRV reported that the case was dismissed.

45.     Plaintiff wrote to Equifax twice to dispute the accuracy of the bankruptcy record.

46.     Equifax has no record of a telephonic dispute from Plaintiff regarding the bankruptcy record.

47.     In the first written dispute, dated January 16, 2007, Plaintiff stated: "I noticed an error on my credit report under the PUBLIC RECORDS category.  Please be advised that I have never filed BANKRUPTCY and that you are reporting an error that is negatively impacting my credit provide and my credit score. . . ."

48.     On January 22, 2007, Equifax received the letter and opened a reinvestigation case, otherwise referred to by Equifax as an ACIS case.

49.     On January 26, 2007, Equifax sent notice of the dispute to its PRV, ChoicePoint, and instructed it that Plaintiff stated that the item was not his.

50.     Equifax asked ChoicePoint to provide the complete identification information from the public record so that Equifax could compare it to what it already had on file.

51.     On January 26, 2007, ChoicePoint verified to Equifax that the identification matched and that the record was reporting accurately.

52.     That same day, Equifax, through its automated procedure, sent a response to Plaintiff.

53.     Equifax's system chose the "cons comm" or explanatory paragraph that stated that Equifax verified that the item belonged to Plaintiff.

54.     Equifax provided the address for the court to the consumer in case he had any

additional questions about the item.

55.    The second written dispute from Plaintiff was dated March 4, 2007.

56.    Plaintiff again enclosed the "Stipulation of Dismissal of Debtors' Motion For Sanctions Compensatory And Punitive Damages," this time with the clerk's stamp certifying the document.

57.    On March 12, 2007, Equifax received the letter and opened an ACIS case to begin its reinvestigation.

58.    On March 27, 2007, Equifax removed the bankruptcy from Plaintiff's credit file, based on the operator's note that the documents Plaintiff has sent were acceptable to do so.

59.    On March 27, 2007, Equifax sent the response to Plaintiff showing that the item was deleted.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 4th day of March, 2009 at Atlanta, Georgia

By: _Alicia Fluellen_
    Alicia Fluellen