# EXHIBIT K

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| William A. Harris, Sr., on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Experian Information Solutions, Inc.,<br><br>Defendant. | C/A No.: 6:06-cv-1808-GRA<br><br>**ORDER**<br><br>(Written Opinion) |

This matter comes before the Court on the Renewed Motion for Summary Judgment of Defendant Experian Information Solutions, Inc. ("Experian"). Plaintiff William A. Harris, Sr. ("Plaintiff") has opposed the motion, and Experian has replied. This Court conducted a hearing on June 3, 2009. This matter is now ripe for decision. For the reasons set forth herein, this Court GRANTS summary judgment to Experian.[1]

**BACKGROUND**

A.  Procedural History

Plaintiff William A. Harris, Sr., brought this action on behalf of himself and a putative class of consumers, claiming that Experian negligently and willfully failed "to follow reasonable procedures to assure maximum possible accuracy" of information in credit reports, in violation of the Fair Credit Reporting Act (FCRA). 15 U.S.C. § 1681e(b). Plaintiff's claim arises out of Experian's publication of consumer credit reports that do not contain credit limit data for the Capital One credit card accounts that are reported—data Capital One would not provide to Experian. Plaintiff contends this omission from Experian's credit reports resulted in inaccuracies that adversely affected class members' credit scores and violated the FCRA.

---

[1] Also pending before this Court are summary judgment motions filed by the defendants in two companion cases, Harris v. Equifax Information Services LLC, No. 6:06-1810, and Harris v. TransUnion, LLC, No. 6:06-1811. By separate orders, this court GRANTS the motions for the reasons set forth in this Memorandum Opinion and Order.

Page 1 of 16

Plaintiff sought certification of two classes: a nationwide class for the purpose of awarding injunctive relief and a regional class (comprising Capital One cardholders in the states of Maryland, Virginia, West Virginia, North Carolina, and South Carolina) for an award of damages. While the class certification motion was pending, Experian moved for summary judgment. This Court denied the motion, reasoning in part that summary judgment was premature because discovery was still open. Experian moved for reconsideration or for certification to appeal the denial of summary judgment, see 28 U.S.C. § 1292(b). This Court denied that motion by Order dated August 13, 2007. On May 29, 2008, the Court granted in part Plaintiff's motion for class certification, certifying the proposed regional class.

Citing new developments in the applicable law and in this litigation, Experian renewed its motion for summary judgment on March 2, 2009.

B. Facts

The undisputed facts are as follows.

1. Experian is one of the three major national consumer reporting agencies (CRAs). The CRAs prepare consumer credit reports based on information voluntarily provided by credit grantors like Capital One, which is one of the country's largest issuers of credit cards.[2] CRAs are not credit grantors and do not make decisions regarding whether or not to provide credit to consumers.

2. A credit grantor like Capital One may provide all information about a given account, some information, or no information at all, and it may choose to provide information to one CRA but not to another. Among the items of information that may be reported are the consumer's credit limit and high balance. The high balance—the highest outstanding balance ever accumulated in the account—may be same as the credit limit, or it may be higher or lower than the stated credit limit.

---

[2] In the context of the credit reporting system, credit grantors are sometimes referred to as "furnishers" of information.

3. After a CRA issues a credit report, the information in that report can be used to calculate a "credit score." A credit score is designed to quantify how risky an extension of credit would be to a given consumer based on that consumer's prior credit-related behavior. See Robert B. Avery, Paul S. Calem & Glenn B. Canner, "Credit Report Accuracy and Access to Credit," Fed. Reserve Bull., Summer 2004, at 298-99. Generally, the higher the credit score, the lower the perceived risk of extending credit.

4. The most commonly used credit-scoring models are developed by Fair, Isaac and Company (FICO), which holds approximately 90 percent of the market for credit scoring. A credit scoring model gathers various items of information contained in a credit report, such as the number of open accounts, the consumer's payment history, and any prior bankruptcies or foreclosures. It then assigns varying weights to these factors. Thus, one credit report may result in different credit scores depending upon the scoring model used. Although a CRA prepares the credit report that is input into the credit scoring model, the CRA has no control over how an independent model developer (e.g., FICO) chooses and weighs the attributes used to calculate a score.[3]

5. Often among the data relevant to calculating a credit score is a consumer's "credit utilization," i.e., the ratio between a consumer's outstanding balances on revolving credit lines and the credit limits on those lines. Scoring models often take into account how much of a consumer's available credit the consumer is utilizing, with a lower utilization ratio sometimes contributing to a higher credit score, and vice versa.

6. When a credit report includes a revolving credit account for which no credit limit is reported, many scoring models calculate the consumer's utilization percentage by substituting the high balance on the account for the unavailable credit

---

[3] To be sure, each of the national CRAs creates and sells certain proprietary credit scores of its own. However, the CRAs are minor players in the credit score market, and Plaintiff's lawsuit challenges only credit reporting, not credit scoring.

limit. This may cause a credit score to go up, down, or remain the same, depending upon the relationship between the consumer's high balance and credit limit on that account, the consumer's total number of open accounts, and a mix of other information.

7. Capital One is a credit grantor which issues revolving credit card accounts to consumers. Capital One also furnishes information to CRAs, including Experian. Until recently, Capital One elected not to provide credit limit information for its account holders when reporting on those accounts to Experian. Capital One apparently withheld this information in an effort to gain a competitive advantage and out of concern that rival credit card companies would obtain the information and use it to "poach" Capital One's customers.

8. Capital One refused requests by Experian and other CRAs that it furnish credit limit information. Lawsuits by consumers, attempting to impose civil liability on Capital One for its decision, were dismissed on the basis that Capital One had no legal duty to report credit limit information. See, e.g., Baker v. Capital One Bank, 2006 WL 2523440, at *3 (D. Ariz. Aug. 29, 2006).[4]

9. Because of Capital One's policy, credit reports issued by Experian for consumers with Capital One accounts did not include the credit limit for those accounts. Instead, the reports indicated the high balance for the account, clearly marked as such. Plaintiff has never contended that users of the credit reports mistook the "high balance" line item for a "credit limit" line item.

10. In January 2007, Capital One indicated that it intended to begin furnishing credit limit information. By the end of 2007, Capital One was furnishing credit limit information for all of its open credit card accounts.

---

[4] The district court in Baker explicitly rejected, with respect to Capital One, the very argument Plaintiff makes here, namely, that the FRCA imposes a duty to furnish credit limit information because the absence of such information may negatively impact the credit score under the scoring model of a third party, such as FICO. See Baker, 2006 WL 2523440, at *3 ("[T]hird party use of a possibly imperfect methodology in synthesizing consumer information for commercial use does not give rise to a legal duty, previously unrecognized, requiring creditors to cater their reporting to such third party's methodology.").

11. Plaintiff initially argued that omission of a consumer's credit limit information, and the resultant (assumed) higher utilization percentage, necessarily decreased that consumer's credit score. Discovery, however, has not borne that theory out. Uncontroverted studies have demonstrated that, for various reasons, the substitution of "high balance" for "credit limit" in a credit report has no impact on, or *increases*, a consumer's credit score in the vast majority of cases. See, e.g., Expert Report of Angela Granger ¶¶ 4, 44-48; Expert Report of Marsha J. Courchrane ¶ 27.

12. Plaintiff does not claim that his own credit score was lower because of Capital One's decision to withhold credit limit data. Furthermore, of the relatively small number of the estimated four million-plus class members who may have received a marginally lower credit score, Plaintiff has not identified a single consumer who suffered any adverse effect, such as a denial of credit or an offer of credit at a less-favorable rate, as a consequence of the non-reporting of credit limits by Capital One.

13. Plaintiff concedes that he cannot prove that he or any class member has suffered any actual damages. Consequently, Plaintiff seeks only nominal damages on his claim that Experian negligently violated the FCRA. See 15 U.S.C. §1681o. However, during the hearing on the pending Motion, Plaintiff asserted entitlement to $1,000 statutory damages per class member on the claim that Experian willfully violated the FCRA. See 15 U.S.C. § 1681n (permitting statutory damages "of not less than $100 and not more than $1,000").

## ANALYSIS

I. Applicable Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see Signal v. Gonzales, 430 F. Supp. 2d 538, 537 (D.S.C. 2006). "[A] material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see id. ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). Under this standard, summary judgment is appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut," but rather as an important mechanism for weeding out "claims and defenses [that] have no factual bases." Id. at 327.

This Court's denial of Experian's previous motion for summary judgment does not bar consideration of the present motion. A denial of summary judgment is an interlocutory order that "may be revised at any time before entry of judgment." Fed. R. Civ. P. 54(b); see Shouse v. Lundgren, 792 F.2d 902, 904 (9th Cir. 1986); Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990), abrogated on other grounds by Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994). "It is well-accepted that no more justification need be offered to support a trial judge's reversal of his ... negative ruling on a summary judgment motion than the mere assertion that the judge changed his or her mind ...." Washington v. Digital Equip. Corp., 968 F.2d 1213, 1992 WL 167946, at *7 (4th Cir. 1992) (per curiam) (unpublished table decision) (internal quotation marks omitted).

The Court is not simply changing its mind, however. There have been significant developments in the nearly two years since the Court ruled on the previous

motions that make revisiting the earlier decision appropriate. "A subsequent motion for summary judgment based on an expanded record is always permissible." Williamsburg Wax Museum, Inc. v. Historic Figures, Inc., 810 F.2d 243, 251 (D.C. Cir. 1987) (noting that substantial discovery took place after denial of first motion for summary judgment); see Curran v. Ho Sung Kwon, 153 F.3d 481, 487 n.5 (7th Cir. 1998) (noting that second summary judgment motion was based on additional discovery). The Court now has the benefit of developments in the case law and additional government reports that shed new light on the central issues in this case; these developments require reassessment of Experian's arguments. Moreover, the Court has not yet ruled on Experian's claim that Plaintiff cannot, as a matter of law, make the threshold showing of "objective unreasonableness" required for an FCRA "willfulness" claim to survive summary judgment under Safeco Insurance Co. v. Burr, 551 U.S. 47 (2007). See Sejman v. Warner-Lambert Co., 845 F.2d 66, 69 (4th Cir. 1988) (holding that a court is free to address "questions which might have been decided but were not" in an earlier stage of the litigation (internal quotation marks omitted)); see also Women's Equity Action League v. Cavazos, 906 F.2d 742, 751 n.14 (D.C. Cir. 1990) (noting that "law of the case" doctrine does not preclude a court from considering issues it has not previously decided).

II.     Asserted Violation of 15 U.S.C. § 1681e(b)

The FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). The Fourth Circuit addressed the standard of liability under § 1681e(b) in Dalton v. Capital Associated Industries, Inc., 257 F.3d 409 (4th Cir. 2001), holding that "[t]o make out a violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." Id. at 415. A report is "inaccurate" when it is

when it is "patently incorrect."[5] Id. Plaintiff alleges that Experian's failure to include credit limit data resulted in the issuance of inaccurate credit reports, in violation of § 1681e(b), and that Experian did not maintain "reasonable procedures" to prevent the issuance of such reports. Plaintiff's claim fails on both grounds: the reports issued by Experian were not inaccurate under the FCRA, and, even if they were, Experian "follow[ed] reasonable procedures to assure maximum possible accuracy" of the reports.

    A.    Accuracy

With respect to accuracy, Plaintiff alleges that Experian's credit reports were inaccurate because they do not contain credit limits for Capital One accounts, which constitute relevant data for calculating credit scores. Experian contends that there is nothing inaccurate about the reports because all of the information in them was correct, and correctly identified, and that any purported "incompleteness" of the reports did not render them inaccurate.

This Court agrees with Experian that a credit report is not "inaccurate" when it does not include a credit limit that has not been provided by a furnisher. A credit report is not "inaccurate" simply because it does not include all relevant information about a consumer. Indeed, Plaintiff cites no authority for the proposition that a credit report is "inaccurate" under the FCRA simply because it omits information that some might deem relevant. See Koropoulos v. Credit Bureau, Inc., 734 F.2d 37, 45 (D.C. Cir. 1984) (rejecting the notion "that the Act requires all relevant credit information be included in agencies' reports").[6] Accord Saunders v. BB&T, 526 F.3d 142, 148 (4th

---

[5] Dalton also provides that a credit report may be inaccurate "when it is 'misleading in such a way and to such an extent that it can be expected to have an adverse' effect." Dalton, 257 F.3d at 415 (quoting Sepulvado v. CSC Credit Servs., Inc., 158 F.3d 890, 895)). Plaintiff has expressly waived any claim that Experian's credit reports were inaccurate because they were misleading. See Reply Memorandum in Support of Class Certification, at 2-3. Furthermore, Experian's credit reports, as a matter of law, were not misleading. Experian reported a consumer's high balance, clearly designated as such. No reasonable user of a credit report issued by Experian could be misled into thinking that that the consumer's "high balance" was the "credit limit."

[6] Koropoulos is the only case that can be read to adopt the extreme position that mere incompleteness might justify a finding of a violation of § 1681e(b). This view has never been adopted by any other court, and was implicitly rejected by the Fourth Circuit in Dalton and Saunders.

Cir. 2008) ("[I]ncomplete reporting can violate the FCRA <u>when it is misleading.</u>" (emphasis added)). Plaintiff acknowledges, as he must, that the information in Experian's credit reports was objectively correct: the reports always clearly distinguished between a consumer's high balance and credit limit. Aff. of Pat Finneran ¶ 17. Moreover, Plaintiff's expert acknowledged that Capital One's refusal to provide credit limit information was well known in the industry. Dep. of John Ulzheimer at 93:11-16 (stating that Capital One's position "almost became so commonly known that we ... would glaze over it").

Experian's position is further supported by the proposed "Final Rules: Procedures to Enhance the Accuracy and Integrity of Information Furnished to Consumer Reporting Agencies under Section 312 of the Fair and Accurate Credit Transactions Act" (the "Rules"), recently published by several federal agencies responsible for the administrative enforcement of the FCRA. The Rules were promulgated in response to a congressional directive to "establish and maintain guidelines ... regarding the accuracy and integrity of the information relating to consumers" that is provided by credit grantors such as Capital One. 15 U.S.C. § 1681s-2(e)(1).

Among other things, the Rules require furnishers of information, for the first time, to include "credit limit information, if applicable and in the furnisher's possession," when providing information on a consumer's account. Rules, at 28. Notably, this requirement is imposed as part of the congressional directive to improve the "integrity" of reported information. The Rules explicitly distinguish between the requirements of "accuracy" and "integrity" and make clear that the new requirement to furnish credit limit information is a function of integrity, not one of accuracy. This Court accepts the Rules as the considered view of several governmental agencies bearing responsibility for supervision of the credit system.

B.  Reasonable Procedures

Even if Plaintiff could show that Experian's credit reports were inaccurate, in order to succeed on his FCRA claim he would also have to prove that Experian "did not

follow reasonable procedures" to assure "maximum possible accuracy." 15 U.S.C. § 1681e(b). Plaintiff contends that Experian failed to follow such reasonable procedures because it did not do enough to persuade Capital One to report consumers' credit limit information, despite Experian's knowledge that the absence of such information would ultimately affect consumers' credit scores. Again, while Plaintiff' claim is novel, it fails under the FCRA.

A central feature of the United States credit reporting system as regulated by the FCRA is that, with narrow, expressly enumerated exceptions, those who may have credit information have no legal obligation to report that credit information to the CRAs. Instead, it is a voluntary reporting system, under which furnishers of credit data may choose whether to furnish *any* information and, if so, which particular items to furnish. See, e.g., Rules at 29 ("[T]he furnishing of information about consumers is voluntary" under the FCRA); U.S. Gen. Accounting Office, Consumer Credit: Limited Information Exists On Extent of Credit Report Errors and Their Implications for Consumers 10 (July 31, 2003) (statement of Richard J. Hillman, Director, Financial Markets and Community Investment) ("It is important to note that reporting information to the CRAs is voluntary on the part of data furnishers."); Robert B. Avery, Paul S. Calem & Glenn B. Canner, Credit Report Accuracy and Access to Credit, Fed. Reserve Bull., Summer 2004, at 298, 299 (noting that "[r]eporters submit information voluntarily"). Indeed, the voluntary nature of the system is so central that Congress expressly directed the FTC, in "study[ing] . . . ways to improve the operation of the Fair Credit Reporting Act," to consider only those actions to increase the reporting of credit information "that might be taken within a voluntary reporting system." Fair and Accurate Credit Transactions Act of 2003, Pub. L. No. 108-159, § 318(a)(1), (a)(2)(E), 117 Stat. 1952 (2003).

Plaintiff's claim, which rests on Experian's purported failure to somehow coerce Capital One into providing credit limit information, runs counter to the intrinsically voluntary nature of this scheme. Had it wanted to, Congress could have created an

exception to this voluntary system by requiring data furnishers like Capital One to report to CRAs particular items of credit information, such as credit limits. Congress has already done just that with respect to certain information data furnishers must report, such as voluntary account closures, see 15 U.S.C. § 1681s-2(a)(4), consumer disputes over information, see id. § 1681s-2(a)(3), and delinquencies, see id. § 1681s-2(a)(5). That Congress had this tool at its disposal but did not use it demonstrates that it did not intend depart from the voluntary norm and require data furnishers to provide credit limit information, let alone require CRAs to somehow force furnishers to provide credit information that furnishers had no legal obligation to provide. It would be counterintuitive to conclude that Congress intended to hold CRAs liable for producing reports without credit limits, when data furnishers were never required to provide the information. Congress could not have intended such an absurd result.

Moreover, there is no requirement in the FCRA that CRAs affirmatively collect information. The plain statutory language provides that § 1681e(b)'s "reasonable procedures" requirement applies only "when prepar[ing] a consumer report." Even in instances in which the FCRA requires CRAs to report certain information, that obligation exists only when that information is provided to the CRA—there is no obligation on the CRA to take steps to procure information not provided to it. See 15 U.S.C. § 1681c(d)(1) (requiring CRAs to report bankruptcy information "if provided by the source of the information"); id. § 1681c(e) (requiring CRAs to report voluntary closing of credit account only if "notified" of the closing); id. § 1681c(f) (requiring CRAs to report the fact that a consumer has contacted a data furnisher to dispute information if "notified" by the data furnisher). The absence of an FCRA-imposed duty to collect information is confirmed by the proposed Rules, which require the reporting of credit limits by furnishers only when they are "applicable and in the furnisher's possession," such that a furnisher "would not be expected to provide credit limit information" that "is not in its possession." Rules, at 28-29 (emphasis added).

Plaintiff's contention that § 1681e(b) obliges a CRA to collect or report information that is not voluntarily provided is fundamentally inconsistent with this approach. [7]

Accordingly, Experian's alleged failure to adopt procedures to somehow coerce Capital One into producing credit limit information, or to adopt procedures to affirmatively collect credit limit information in some other way, does not state a cognizable violation of § 1681e(b)'s "reasonable procedures" requirement.

III.   Damages

A consumer who establishes a violation of § 1681e(b) provision may, upon a proper additional showing, be entitled to two forms of damages. See 15 U.S.C. §§ 1681n, 1681o; Dalton, 257 F.3d at 417 (holding that the FCRA "does not impose strict liability" for violations, but rather allows an award of damages upon an additional showing of negligence or willfulness). A plaintiff who demonstrates that the CRA was negligent is entitled to "any actual damages sustained ... as a result of the failure," as well as costs and attorney's fees. 15 U.S.C. § 1681o. A plaintiff who demonstrates that the CRA "willfully fail[ed] to comply" with § 1681e(b) is entitled to enhanced penalties in the form of "actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1000," punitive damages in an amount allowed by the court, and costs and attorney's fees. 15 U.S.C. § 1681n(a); see Dalton, 257 F.3d at 417.

Given this Court's holding above that there has been no violation of the FCRA at all, Plaintiff's damages claims fail *a fortiori*. The Court nevertheless finds it appropriate to address Plaintiff's damages claims and concludes, as an alternative ground of decision, that Plaintiff has failed, as a matter of law, to establish entitlement to either form of damages.

---

[7] This reasoning also disposes of Plaintiff's alternative argument that Experian failed to adopt adequate procedures to allow Capital One credit card holders to report their credit limit information to Experian. In any event, Plaintiff has offered no evidence that he or any other class member attempted unsuccessfully to provide credit limit information to Experian, and no evidence that Experian's procedures in this respect were inadequate.

A.  Negligence

15 U.S.C. § 1681o(a) provides that "[a]ny person who is negligent in failing to comply" with the FCRA is liable for "any actual damages sustained by the consumer as a result of the failure." Therefore, as a matter of the statutory text, Plaintiff must show both actual damages and proximate cause in order to recover for a negligent violation of the FCRA. Plaintiff has failed, as a matter of law, to make either showing.

Studies conducted by Experian's experts—uncontradicted by any study in support of Plaintiff—establish that the omission of credit limits had no effect at all on the FICO credit scores of the vast majority of consumers, and actually *raised* the scores of some. See Expert Report of Angela Granger ¶¶ 44-48. Importantly, even as to the relatively few consumers within the certified class who may have seen a decrease in their credit scores, Plaintiff has failed to identify a single one who has suffered any adverse effect as a consequence of the non-reporting of a credit limit.

Acknowledging his inability to identify an adverse effect on any class member, Plaintiff has asserted that he seeks only nominal damages. But, nominal damages are not available under § 1681o(a)(1) in light of the statutory language expressly limiting recovery to "actual damages." See, e.g., Nagle v. Experian Info., 297 F.3d 1305, 1306 (11th Cir. 2002) ("[T]he only liability provided for in [§ 1681o] is actual damages."); In re TransUnion Corp. Privacy Litig., 211 F.R.D. 328, 346 (N.D. Ill. 2002) (holding that nominal damages are not available under § 1681o "[b]ecause proof of [actual] damages is an element of recovery"); see also Doe v. Chao, 540 U.S. 614, 623 n.6 (2004) (holding nominal damages unavailable under statute that expressly provided for "actual damages"). Even when nominal damages exist as a possible remedy, they are generally unavailable "unless actual loss has occurred." Hyde v. Hybernia Nat'l Bank, 861 F.2d 446, 448 (5th Cir. 1988); see Restatement (Second) of Torts § 907 cmt. a (1965) ("If actual damage is necessary to the cause of action, as in negligence, nominal damages are not awarded."). As discussed above,

Plaintiff has abandoned any attempt to prove any "actual loss," and thus cannot be entitled to an award of nominal damages.[8]

B.   Willfulness

Experian argues that the decision of the Supreme Court in Safeco Insurance Company of America v. Burr, 551 U.S. 47 (2007), bars Plaintiff's willfulness claim independently of this Court's conclusion that Experian did not violate § 1681e(b). In the prior order denying Experian's motion for summary judgment, this Court declined to address the threshold "objectively unreasonable" test of willfulness introduced by Safeco. Now addressing the issue, this Court concludes that Plaintiff is unable, as a matter of law, to establish that Experian acted willfully.

In Safeco, the Supreme Court held that in order to establish a willful violation of § 1681e(b), a plaintiff must prove that the defendant violated the requirements of the FCRA either "knowingly" or "recklessly." Safeco, 127 S. Ct. at 2208. Proof of such a claim requires the plaintiff to demonstrate that the defendant's action "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 2215. The Supreme Court further clarified that a plaintiff cannot prevail on a willfulness claim unless the defendant's interpretation of the FCRA is "objectively unreasonable"—that is, the defendant's reading of the requirements of the FCRA is contrary to "pellucid" statutory text, pertinent decisions by the federal courts of appeals, or authoritative guidance from the Federal Trade Commission. Id. at 2216. Whether a defendant's reading of the FCRA is unreasonable is an objective question that must be decided as a matter of law,

---

[8] The parties each cite unpublished decisions of the Fourth Circuit in support of their respective positions on nominal damages. Plaintiff points to Wright v. TRW, Inc., 872 F.2d 420, 1989 WL 27516, at *4 (4th Cir. 1989) (per curiam), where the Fourth Circuit stated in dicta that "[n]ominal damages may be awarded to acknowledge that a legal wrong has taken place." Experian cites Lambert v. Credit Bureau, No. 84-2156, slip op. at 3 (4th Cir. July 11, 1985), which squarely held that an FCRA plaintiff cannot receive an award of nominal damages under § 1681o. To the extent either decision holds any persuasive power, this Court concludes that Lambert, not Wright, is consistent with FCRA case law and the general principles of tort liability cited above.

without regard to "whatever [the defendant's] subjective intent may have been." Id. at 2216 n.20. So long as "the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation," the defendant cannot be deemed a willful violator. Id. Accordingly, as recent decisions by the federal courts of appeals have confirmed, the question of whether Experian's reading of the FCRA was so clearly wrong as to be "objectively unreasonable" is appropriately decided on summary judgment. See Levine v. World Fin. Network Bank, 554 F.3d 1314, 1317-19 (11th Cir. 2009) (affirming grant of summary judgment based on lack of willfulness under Safeco); Murray v. New Cingular Wireless Servs., Inc., 523 F.3d 719, 725-27 (7th Cir. 2008) (same).

Applying the Safeco test, this Court must grant summary judgment to Experian on the question of willfulness because Experian's interpretation of the FCRA is not "objectively unreasonable." Safeco, 127 S. Ct. at 2216. Plaintiff's claim is premised on two interpretations of the FCRA: (1) that a credit report that contains no erroneous information, but does not include certain additional items of credit information, is "inaccurate" under § 1681e(b); and (2) that a CRA can be liable for failing to report the additional credit information even though the credit grantor who possesses that information, in this case Capital One, refuses to provide it to the CRA.

As discussed above, this Court agrees with Experian that failure to report a credit limit, when that information is not provided by a furnisher, does not render a credit report "inaccurate." Furthermore, even if Experian's reading of § 1681e(b) were incorrect, it would not be "objectively unreasonable." First, Experian's interpretation of the FCRA does not contravene "pellucid" statutory text. Second, Plaintiff has pointed to no decision of any federal appellate court imposing liability for either a non-misleading omission from a credit report or for a failure to force an unwilling furnisher to provide information; neither has Plaintiff pointed to any authoritative guidance from the FTC on these subjects. Under Safeco, that is the end of the matter. See Levine, 554 F.3d at 1319 ("What matters under Safeco is the text of the Act and authoritative

interpretations of the text. A consumer reporting agency does not recklessly violate the Act when it acts in accord with an objectively reasonable interpretation of the Act."). Accordingly, Experian is entitled to summary judgment on the question of whether any violation of the FCRA was "willful."

IV.  Injunctive Relief

Finally, Plaintiff seeks injunctive relief in the form of a permanent injunction requiring Experian not to report any Capital One account that does not include information regarding the credit limit. Because Plaintiff has failed to establish a violation of the FCRA, injunctive relief is necessarily improper.

## CONCLUSION

For the reasons set forth above, this Court concludes that Plaintiff's claim against Experian fails as a matter of law. Accordingly, the pending motion for summary judgment is GRANTED.

*[signature]*

G. Ross Anderson, Jr.
Senior United States District Judge

June 30, 2009

Anderson, South Carolina