**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD CHAKEJIAN,<br>on behalf of himself and all others<br>similarly situated,<br><br>　　　　　Plaintiffs,<br>　vs.<br><br>EQUIFAX INFORMATION SERVICES LLC,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br>C. A. No. 07- 2211<br><br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' OMNIBUS MOTION *IN LIMINE***

This consumer protection class action is scheduled to commence trial before this Court and a jury on June 7, 2010.  In accordance with this Court's scheduling orders dated October 29, 2009 (Docket No. 71) and May 13, 2010 (Docket No. 102), Plaintiff Chakejian on behalf of the Class now moves *in limine* to preclude Defendant Equifax Information Services LLC ("Equifax") from offering certain improper evidence and arguments at trial.

1. **Equifax should be precluded from offering any evidence or making any argument at trial concerning Mr. Chakejian's other lawsuits and business disputes**

Plaintiff Chakejian has been involved in multiple businesses and both he and his father have litigated various business disputes through the years.  Equifax took written discovery on Plaintiff Chakejian's other lawsuits, some of which resulted in judgments against Plaintiff and/or his father, and various other business disputes.  Equifax also questioned Plaintiff about these matters at his deposition.  It then tried to make an argument at the class certification stage that Mr. Chakejian's other lawsuits and business disputes somehow made him inadequate as a class representative in this FCRA case.  *See* Docket No. 45 at p. 15.  This Court rejected those arguments.  *See generally Chakejian v. Equifax Information Services LLC*, 256 F.R.D. 492 (E.D.

Pa. 2009).  Equifax should not now be permitted to revisit those issues at trial.  Simply put, none

of Mr. Chakejian's other litigation or business disputes bear any relevance to the facts and issues

of this case.    Thus, pursuant to Fed. R. Evid. 402 & 403, Equifax should be precluded from

offering any evidence or making any argument at trial concerning Mr. Chakejian's other lawsuits

and business disputes.

**2.  Equifax should be precluded from offering any evidence or making any argument at trial concerning Mr. Chakejian's use of a credit repair organization and other disputes to Equifax, and specifically Equifax trial exhibits 4, 5, 8, 9, 10, 11 and 12 should be excluded**

Equifax has proposed a number of trial exhibits that have no relevance to the claims in

this case and should be excluded.  Exhibits 4-5 and 8-12 are all documents relating to disputes

made to Equifax by a credit repair organization on behalf of Mr. Chakejian having nothing to do

with the form Letter which is the basis of the class-wide FCRA claim.

Mr. Chakejian testified at his deposition that this credit repair organization at issue

(which caused Equifax to generate the above documents) acted without his permission and that

he did not approve, or even see, the shabbily-written and sometimes inaccurate dispute letters.

Exhibits 4-5 and 8-12 are the credit repair organization disputes, Equifax's internal documents of

Mr. Chakejian's credit file, and other internal records used in connection with these other

irrelevant disputes.  Importantly, none of these other disputes involved the form Letter that is the

subject of this action.

It is unclear why Equifax has proposed these exhibits.  They contain irrelevant personal

information and run the risk of prejudicing the Plaintiff before the jury with disclosure of

extraneous credit reporting and the Plaintiff's attempts to address the problems.  The admission

of these exhibits would create an irrelevant sideshow that would detract the jury's attention from

the narrow issue in the case arising from the inaccurate and misleading Letter.  All of the

aforementioned exhibits should be excluded, and Equifax should be precluded from making any

argument at trial concerning Mr. Chakejian's other credit-related disputes.

3. **Equifax should be precluded from offering any evidence or making any argument at trial that Mr. Chakejian or the Class have a burden or need to show any form of actual damages or concerning the fact that Plaintiff Chakejian and the Class are not pursuing a claim for actual damages.**

Plaintiff and the Class have chosen to seek statutory damages of $100 to $1,000, rather

than actual damages.  The FCRA expressly allows a consumer to recover statutory damages for

willful violations of the FCRA, as an alternative to actual damages, at section 1681n(a)(1)(A).

Therefore, Equifax should not be allowed to refer to actual damages, or that Plaintiff and the

Class are not seeking actual damages.  Actual damages are simply not relevant in this case where

the consumers are seeking only statutory damages.

It is well established that a plaintiff can choose which types of damages to pursue, and

effectuate that decision through the complaint, or in this case Plaintiff's Amended Complaint.

Plaintiff and the Class have decided to seek only statutory damages, as is their right under FCRA

section 1681n(a)(1)(A).

Equifax should not be allowed to refer to a claim for actual damages that Plaintiff and the

Class *have not brought.* Such evidence is irrelevant.  Evidence is relevant only if "tending to

make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Because

the Class is not seeking actual damages, they are not relevant to the issues to be decided by the

jury.  Neither is the fact that the Class is not pursuing a claim for actual damages.  The only

issues for the jury are whether Equifax willfully failed to comply with the FCRA and the amount

of *statutory* damages.  Evidence or argument relating to actual damages, or the fact that the Class

3

is not seeking actual damages, would not tend to prove or disprove the issues to be decided by the jury.

If Equifax is allowed to refer to actual damages, that could mislead the jury into believing that Plaintiff or other Class members have to prove actual damages to prevail on the FCRA claim.  That is contrary to settled law.  A consumer making a claim for a willful violation of the FCRA may recover statutory damages even if there are no "identifiable or measurable actual damages."  *Beaudry v. Telecheck Servs.*, Inc., 579 F.3d 702, 705-06 (6th Cir. 2009).

This Court has already addressed the issue, adhering to precedent and holding that consumers in a class action may seek statutory damages under section 1681n for willful violations without any proof of actual damages.  *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 496, 499-500 (E.D. Pa. 2009).  *See also Murray v. GMAC Mortgage Corp*., 434 F.3d 948, 952-54 (7th Cir. 2006) (consumer may recover FCRA statutory damages even in case of no actual damages); *Follman v. Village Squire, Inc*., C.A. No. 07-C-3767, 2007 WL 4522614, at *5 (N.D. Ill. Dec. 18, 2007) (in FCRA class action, finding that "[t]he only reasonable interpretation of section 1681n is . . . a showing of actual harm is not necessary to pursue statutory damages"); *Williams v. LexisNexis Risk Management Inc*., C.A. No.  3:06cv241, 2007 WL 2439463, at *9 (E.D. Va. Aug. 23, 2007) (statutory damages case against CRA); *Blanco v. El Pollo Loco, Inc*., C.A. No. CV 07-54 JVSRNBX, 2007 WL 1113997, at *2 (C.D. Cal. Apr. 3, 2007) ("section 1681n contains no such requirement" of actual harm).

Thus, even if the evidence of actual damages were relevant, it should be excluded pursuant to Fed. R. Evid. 403. Under that rule, relevant evidence may be excluded where its probative value is outweighed by prejudice, confusion or waste of time.  Allowing Equifax to discuss actual damages, or a claim for actual damages that is not being made, will waste time and

4

cause the jury to be misled or confused.

Equifax would discuss actual damages, or the lack of such damages, implying that the Class has not proven an essential element of its claim.  That would be false.  Plaintiffs would then spend time discussing actual damages and the fact that no such damages need be proven.  Plaintiffs would have to discuss the alternative provisions for damages in FCRA section 1681n(a)(1)(A), as well as the reasons the Class is not seeking actual damages.

This would be a great waste of time.  Moreover, the jury would be hearing about portions of the FCRA concerning actual damages that do not apply to this case.  That would be confusing at a minimum, and misleading at worst.

Plaintiff Chakejian and the Class have made this case less complex, with less factual issues for the jury, by choosing not to pursue actual damages.  This Court should not allow Equifax to needlessly complicate the issues by offering irrelevant and confusing evidence concerning actual damages or an actual damages claim that is not part of the case.

**4.  Equifax should be precluded from offering any evidence or making any argument at trial concerning the fact that the FCRA has a negligence claim, at section 1681o, which Plaintiff Chakejian and the Class are not pursuing**

Plaintiff and the Class have chosen to pursue a claim for willful failure to comply with the FCRA, under section 1681n.  They have chosen not to pursue a claim under section 1681o for negligent failure to comply with the FCRA.

It is well established that a plaintiff can choose which claims to pursue, and effectuate that decision through a complaint.  A plaintiff can also decide to add or drop claims and file an amended complaint with the new or remaining claims.  Through the Amended Complaint, Plaintiff and the Class have chosen the willful claim under section 1681n.

Equifax should not be allowed to refer to a negligence claim that Plaintiff and the Class *have not brought.* Such evidence is irrelevant. Evidence is relevant only if "tending to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The only issues for the jury are whether Equifax willfully failed to comply with the FCRA and the amount of statutory damages. Evidence or argument relating to a claim for negligent violation of the FCRA would not tend to prove or disprove whether Equifax willfully violated the FCRA.

Even if evidence related to the failure to pursue a negligence claim were relevant under Fed. R. Evid. 401, it should still be excluded pursuant to Fed. R. Evid. 403. Under that rule, relevant evidence may be excluded where its probative value is outweighed by prejudice, confusion or waste of time. Allowing evidence concerning a negligence claim that was not pursued will waste time and cause confusion.

Equifax would discuss the negligence claim and point out that Plaintiff chose not to pursue it. Plaintiffs would then have to explain the parameters of a negligence claim and the reasons for not pursuing such a claim. Plaintiffs would also discuss the differences regarding the damages available under each type of claim. The jury would be hearing about sections of the FCRA that do not apply to this case. They would be informed about "negligence" when that is not the legal standard they would be using to judge Equifax's conduct. This would lead to confusion of the jury.

This case is relatively simple, in large part because Plaintiffs are only pursuing a claim for willful violation of the FCRA and statutory damage of $100 – $1,000. The Court should keep it that way by not allowing Equifax to offer irrelevant and confusing evidence of a negligence claim that is not part of the case.

5.  **Equifax should be precluded from offering any evidence or making any argument at trial concerning Plaintiff's original Complaint, and specifically Equifax trial exhibit 16 should be excluded**

Equifax seeks to introduce evidence of Plaintiff Chakejian's original Complaint in this matter, and has listed that original Complaint as trial exhibit D-16.  No reference to the original Complaint should be permitted.  Equifax is simply attempting to confuse the jury and to improperly prejudice Mr. Chakejian, not to offer any legitimate evidence.  *See* Fed. R. Evid. 402 and 403.

Ordinarily defendants would protest against the use of the complaint as a piece of evidence at trial -- for a complaint is plainly not evidence.  The original Complaint here is also not evidence.  Importantly, the original Compliant was amended as of right pursuant to Fed. R. Civ. P. 15(a) on September 28, 2007, and Plaintiffs' claims here are governed and limited by the Amended Complaint.   (Docket No. 2).   Noticeably, Equifax does not offer the Amended Complaint as "evidence," and has put Plaintiff and the Class to their proofs on virtually every single allegation asserted in that Amended Complaint.

Defendant tried at the class certification stage to make much about the fact that Plaintiff amended his original Complaint to bring class claims and to select statutory damages, as opposed to actual damages, under FCTA section 1681n, as is his right.   Specifically, Equifax unfairly attacked Plaintiff Chakejian as inadequate and also argued that predominance allegedly did not exist because of Mr. Chakejian's decision to amend his original Complaint and instead pursue statutory damages class claims.  *See* generally, Docket No. 45 at pp. 11-13.  This Court already rejected Equifax's arguments in this regard.   *See generally Chakejian v. Equifax Information Services LLC*, 256 F.R.D. 492 (E.D. Pa. 2009).  This Court also held a hearing on Equifax's attempt to take discovery on the original Complaint, and specifically rejected that attempt as

well.  *See* Transcript of June 26, 2008 In-Chambers Conference re: Discovery at pp. 25-26 (Docket No. 36).

Equifax should not now be permitted to take the same improper swipes at Plaintiff Chakejian in front of the jury.  The original Complaint simply is not evidence and it adds nothing of relevance to any of Equifax's defenses in this matter.  Moreover, as any plaintiff in any civil case, Plaintiff Chakejian here is the master of his case and may try whatever claims, and pursue whatever cognizable damages, he thinks give him the best shot of winning at trial -- regardless of whether he amended his pleadings or whether he ever brought additional or alternative claims that he is now not pursuing.  The original Complaint, and any attempt to elicit testimony or offer argument regarding it, should be excluded.  *See* Fed. R. Evid. 401, 402, 403.

### 6.  Equifax should be precluded from offering any evidence or making any argument at trial concerning any "objective reading," "reasonable reading," "advice of counsel," "corporate blessing" or similar defense to willfulness

Defendant argued in its summary judgment motion that because its reading of the FCRA was not "objectively unreasonable," it did not act "willfully" and was therefore entitled to judgment in its favor.  But because Equifax refused to allow Plaintiff to pursue discovery on the basis for this alleged defense, it should be precluded from offering any evidence or making any argument at trial concerning any "objective reading," "reasonable reading," "advice of counsel," "corporate blessing" or similar defense to Plaintiff's claim that Equifax willfully failed to comply with the FCRA.

Plaintiff Chakejian sought discovery on whether Equifax had any "reasonable reading" or interpretation of any statutory section of the FCRA which it found confusing, ambiguous or unclear, or which it was relying upon in defense of Plaintiff's willfulness allegations.  Equifax produced none.  Through interrogatories, Plaintiff inquired whether Defendant was relying upon

any advice of counsel or reasonable reading of the FCRA, and Equifax responded that it was not. *See* Ex. P to Plaintiff's opposition to summary judgment.   Inquiry number 7 of Plaintiff's Rule 30(b)(6) notice of deposition inquired about the identical area, and neither Ms. Fluellen nor Ms. DeGrace testified about any reading of the FCRA which Equifax had which led it to believe that its Letter was compliant.   *See* Ex. Q to Plaintiff's opposition to summary judgment.   In fact, despite Ms. DeGrace's testimony to the contrary at the *Abusaab* trial, it is clear that no one at Equifax, considered the language in the Letter and whether any changes should have been made. *See* Ex. G, Fluellen Dep. at pp. 57-58.

Plaintiff attempted to pursue that line of inquiry during discovery in this case because, as would appear obvious, if a defendant intends to defend on the basis that its counsel believed defendant's conduct to be compliant with the FCRA, then those communications which would otherwise be privileged are discoverable.  *See Claffey v. River Oaks Hyundai, Inc*., 494 F. Supp. 2d 976 (N.D. Ill. 2007).  Our Circuit has held that a party can waive the attorney-client privilege by asserting claims or defenses that put his or her attorney's advice in issue in the litigation. *Rhone-Poulenc Rorer Inc. v. Home Indem. Co*., 32 F.3d 851, 863 (3d Cir. 1994).  As an example, particularly pertinent to this FCRA willfulness case, the Third Circuit stated: "In an action for patent infringement, where a party is accused of acting willfully, and where that party asserts as an essential element of its defense that it relied upon the advice of counsel, the party waives the privilege regarding communications pertaining to that advice (citing cases)."  32 F.3d at 863.

Nonetheless, when questioned concerning the advice provided to Equifax about the legality of the Letter, the testimony of Ms. DeGrace that her attorney had told her the Letter was being rewritten, and the ultimate decision not to revise the Letter despite its obvious flaws, Equifax's counsel either did not recall, refused to answer or was instructed not to answer

virtually every question, citing the privilege.  *See* Deposition of Lewis Perling, Esq., Exhibit R, at pp. 44-50, 52-54, and 57-65.

If a defendant refuses to answer discovery concerning the facts that purport to support a defense, that defendant should be precluded from relying on that defense at trial.  Therefore, Equifax should not be permitted to offer any evidence or make any argument at trial concerning any "objective reading," "reasonable reading," "advice of counsel," "corporate blessing" or similar defense to Plaintiff's claim that Equifax willfully failed to comply with the FCRA.

7.  **Equifax should be precluded from offering any evidence or making any argument at trial concerning consumer Shadee Abusaab losing his trial in 2006**

In 2006, a consumer plaintiff named Shadee Abusaab lost an FCRA trial against Equifax in the Eastern District of Pennsylvania.  *See Abusaab v. Equifax*, E.D. Pa. Civ. No. 05-5094, Docket No. 56.  That fact is completely irrelevant to this case and Equifax should be precluded from trying to offer any evidence or from making any argument concerning the fact that consumer Abusaab lost his trial.  *See* Fed. R. Evid. 402 (irrelevant evidence to be excluded).

The result of that trial should be excluded even though statements that Equifax's representatives made under oath *during that trial* are highly relevant to this matter.  The Abusaab case was the first time, to Plaintiffs' knowledge, that evidence came to light about Equifax's failure to "investigate" public record disputes "directly," as it represents to consumers, and its failure to disclose the actual source of its public records information -- ChoicePoint.  Equifax was thus put on notice of the problem complained of here in 2006.  Indeed, consumer Abusaab had received the same form letter in that case, following a public records dispute, that Plaintiff Chakejian received in this case.   Equifax's Shawn DeGrace, speaking as its corporate representative, acknowledged at the 2006 Abusaab trial that the form letter was confusing and untruthful.  Ms. DeGrace also represented that the form letter was being "rewritten."  This

statement about the letter being "rewritten" has turned out to be false.  The letter has never been

rewritten and was not being rewritten in 2006 during the Abusaab trial.

Thus Equifax's arguments at the Abusaab trial and Ms. DeGrace's testimony from that

trial will be a part of the trial here -- as those facts are relevant to Equifax's notice of the problem

that is the subject of this action; its false representations about allegedly correcting or addressing

the problem; and Equifax's willful conduct since 2006.

What is irrelevant is the outcome of the Abusaab trial.  Equifax may wish to argue the

jury here should come back with a defense verdict since the jury in Abusaab came back with a

defense verdict.  But that would be both irrelevant and prejudicial, and thus should be precluded

pursuant to Fed. R. Evid. 402 and 403.  The jury in Abusaab did not have an FCRA section

1681i(a)(6) claim before it -- even though it had the same form letter as here in evidence.

Moreover, Equifax misrepresented to that jury that it was rewriting the letter, and in fact thanked

Mr. Abusaab for bringing the problem of the letter to its attention for the first time.  Also,

completely separate factors and claims, irrelevant here, moved the Abusaab trial in Equifax's

favor.  That jury's verdict simply has no bearing on this case.  It should thus be excluded from

evidence.

**8.  Equifax should be precluded from offering any evidence or making any argument at trial concerning the fact that the same law firm represented Plaintiff here and the Plaintiff in *Abusaab v. Equifax***

There is no relevance to the fact that the Francis & Mailman firm represented both the

plaintiff in Abusaab and the Plaintiffs here.  Counsel's prior or other clients cannot have any

relevance at trial and can only be used by an adversary to try to manufacture some improper

inference.  By the same token, Plaintiffs cannot try to create some improper inference by

referencing other clients of King & Spalding or Christie Pabarue Mortensen & Young.  Simply

stated, the identity of counsel's prior of other clients is completely irrelevant.  *See* Fed. R. Evid.

402 and 403.  Thus, Equifax should be precluded from offering any evidence or making any

argument at trial concerning the fact that the same law firm represented Plaintiffs here and the

Plaintiff in *Abusaab v. Equifax*.

9.  **Equifax should be precluded from offering any evidence or making any argument at trial concerning any other litigation involving Plaintiffs' counsel and Equifax**

Plaintiffs' counsel, as part of their regular practice, routinely represent individuals in

consumer protection matters, including in many matters against Equifax.  This is no different

than defense counsel defending many civil actions brought against Equifax by many different

plaintiffs' lawyers throughout the country.  The nature of counsel's practice is irrelevant at trial.

*See* Fed. R. Evid. 402 and 403.  Thus, Equifax should be precluded from offering any evidence

or making any argument at trial concerning any other litigation involving Plaintiffs' counsel and

Equifax.

10. **Equifax should be precluded from offering any evidence or making any argument at trial concerning whether other consumers complained about the form letter, or whether any consumer was subjectively confused by the form letter**

Plaintiffs anticipate that, at trial, Equifax will seek to introduce testimony from one or

more of its witnesses that it did not receive any complaints from other Class members or

consumers that the form Letter was unlawful, misrepresented the source of its public records or

was otherwise misleading, deceptive or confusing.[1]  Such testimony should be precluded on the

ground that it would undermine the function of Fed. R. Civ. P. 23 as it pertains to a class

---

[1]     Plaintiffs' belief that Equifax will seek to offer such testimony is supported by Equifax's reference to the issue in its memorandum of law supporting its Motion for Summary Judgment. Def. Mem. at 29 ("In fact, before this case, Equifax had never received a complaint from a consumer, the FTC, or any government body that its letter to consumers misrepresented the source of its public records or violated the FCRA. *See* Fluellen Decl., ¶¶ 36-41; Perling Dep., 33:7-34:17").

representative's function and duties, and would be irrelevant and unfairly prejudicial in any event.  Several reasons support preclusion of the testimony.

First, given the fact that this is a certified class action, in which the representative Plaintiff Mr. Chakejian has been found adequate to represent the Class, Rule 23 provides that the evidence he proffers will also carry the burden of proof for each and every Class Member.  No other Class members need testify, and none are generally permitted to testify as such testimony would be considered cumulative.  *See generally Samuel–Bassett v. Kia Motors America, Inc.,* Jan. Term 2001, No. 2199 (Phila. Ct. Com. Pl.), Judge Bernstein's Jury Instructions, Trial Tr. 31-33.  The purpose of and efficiency served by Rule 23 would be completely undermined if each and every Class member had to come into court and testify regarding their experience in connection with receiving Equifax's Letter.  Thus, Plaintiff will not be bringing other Class members to testify. Any testimony from Equifax regarding the supposed lack of complaints from other Class members would thus be prejudicial because it would likely lead the jury to mistakenly conclude that Mr. Chakejian was some sort of an anomaly and no other Class members were affected or aggrieved by the Letter because they did not show up at trial and testify, when in fact Rule 23 limited the trial testimony to the Representative Plaintiff.

Second, such anticipated testimony from Equifax would be completely irrelevant. There is no "state of mind" requirement that a consumer prove that she was deceived or confused as a result of the misrepresentations in the Equifax's Letter for the two FCRA claims at issue.   As outlined more fully in Plaintiffs' summary judgment briefing, FCRA sections 1681i(a)(6)(A) and 1681i(a)(6)(B)(iii) require a consumer reporting agency to accurately communicate the results of its reinvestigation and a description of the investigation procedure, respectively.  As such, any violation of these two FCRA subsections occurs at the point of Equifax's sending of the letter.  A

consumer's reaction to the Letter simply has no bearing on either claim.  Thus, whether other Class members or consumers complained to Equifax about the Letter is wholly irrelevant to the claims before the Court.

Finally, any testimony regarding a lack of complaints from other Class members or consumers regarding Equifax's misrepresentations or failure to identify its furnisher would not be dispositive of any issue in the case for the plain and simple reason that no one generally would know *to* complain.   Due to Equifax's multiple misrepresentations, unless other Class members actually went to a courthouse and had unusually detailed conversations with Equifax personnel, they would never know the truth that Equifax never had any contact with the courthouse or the identity of ChoicePoint.  Posed more directly, how would Class members know of the Letter's multiple false representations and/or the role that ChoicePoint played when it was concealed from them?  They would not.   As such, the fact that Equifax did not receive other disputes about the Letter is completely unremarkable and devoid of any relevance.

**11. Equifax should be precluded from offering any evidence or making any argument at trial concerning any impact upon Equifax of the total size of any statutory damages award**

Equifax has argued, in opposing class certification, that "due process concerns are implicated" by a statutory damages case against a corporate defendant.  Def. Mem. at 31 (Doc. 45).  In certifying the Class, this Court rejected that argument and ruled, consistent with the majority of cases to consider the issue, that due process concerns should be addressed only after a verdict; otherwise the concerns are hypothetical.  *Chakejian*, 256 F.R.D. at 502, citing *Murray v. GMAC Mortgage Corporation*, 434 F.3d 948, 954 (7th Cir. 2006).

In essence, Equifax will seek to argue to the jury that the sheer size of its potential liability ought to preclude a statutory damages award, or an award of punitive damages.  First,

the statutory damages argument makes no sense in the context of Equifax's financial viability. An award of $100 to $1000 for each of the approximately 11,839 Class members would lead to a total verdict of statutory damages in the range of $1,183,900 to $11,839,000. Sizeable verdict, perhaps, but certainly nothing that this Defendant, whose parent reported net revenues in 2009 of almost $234,000,000 and net worth of approximately $1B, cannot withstand.[2]

Second, as this Court alluded in the class certification opinion, it is pointless to speculate at this point as to the overall size of a potential verdict. If a verdict is rendered in favor of Plaintiff and the Class, and Equifax's worst fears are realized because it believes the verdict is constitutionally excessive, it may raise the argument at that time. Equifax will be free to contend that due process prohibits the imposition of grossly excessive or arbitrary punishments. *See State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 416 (2003), cited in *Jurinko v. Medical Protective Co.*, 305 Fed.Appx. 13, 25 (3d Cir. 2008). But for now, the Court should rule that Equifax is precluded from making any argument or offering any evidence concerning the impact a statutory damages award would have on Defendant.

**12. Equifax should be precluded from offering any evidence or making any argument at trial in support of its erroneous legal position that ChoicePoint cannot be considered a "furnisher" under the FCRA**

Equifax has attempted to defend Plaintiffs' claim under FCRA section 1681i(a)(6)(B)(iii) by contending that its "public records vendor" ChoicePoint cannot be a "furnisher" under the FCRA. Thus Equifax reasons, if ChoicePoint is not a "furnisher," Equifax does not need to disclose ChoicePoint's identity in the notices that Equifax provides to consumers following a

---

[2]  *See*  UNITED STATES SECURITIES AND EXCHANGE COMMISSION, FORM 10-K (Dec. 31, 2009), http://sec.gov/Archives/edgar/data/33185/000104746910001159/a2196590z10-k.htm.

public records dispute under FCRA section 1681i(a)(6)(B)(iii).  Equifax should not be permitted to make this argument in front of the jury because it is erroneous as a matter for law.

In setting forth a CRA's duty to provide "[p]rompt notice of dispute to [a] furnisher of information" within section 1681i, the FCRA defines a furnisher as "*any person who provided any item of information in dispute*."  15 U.S.C. § 1681i(a)(2)(A) (emphasis added).  Moreover, the FCRA defines "person" as "any individual, partnership, corporation, trust, estate, cooperative, association…or other entity."  15 U.S.C. § 1681a(b).  Neither term limits its definition to lenders or creditors, and neither excludes public records vendors.  The "furnisher" reference in FCRA section 1681i(a)(6)(B)(iii) must logically be the same "furnisher" described earlier in the same FCRA section at subsection 1681i(a)(2)(A), who must be contacted by Equifax earlier in the same reinvestigation process -- that is, "*any person who provided any item of information in dispute*."  No other construction of FCRA section 1681i is possible or logical.

The evidence of record is undisputed that ChoicePoint was a person (it was a corporation or at least "other entity") who "provided an item of information" (the bankruptcy) to Equifax that was "in dispute."  There is simply no basis to exclude ChoicePoint from the realm of "furnisher," and Equifax cites no reliable authority for this proposition.  Thus, Equifax should not be permitted to argue that ChoicePoint is not a "furnisher."

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

BY:     */s/ John Soumilas*
JAMES A. FRANCIS
JOHN SOUMILAS
GREGORY GORSKI
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

DAVID A. SEARLES
**DONOVAN SEARLES, LLC**
1845 Walnut Street, Suite 1100
Philadelphia, PA  19103
(215) 732-6067

ROBERT S. SOLA
**ROBERT S. SOLA, P.C.**
8835 SW Canyon Lane, Suite 130
Portland, OR  97225
(503) 295-6880

Dated: May 24, 2010