## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD CHAKEJIAN, BRUCE A. SUMMERFIELD and TONY LEE WEBB, on behalf of themselves and all others similarly situated )<br><br>Plaintiffs, )<br><br>v. )<br><br>EQUIFAX INFORMATION SERVICES, LLC )<br><br>Defendant. ) | Civil Action No. 07-2211<br><br>CLASS ACTION |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS AND AWARD TO REPRESENTATIVE PLAINTIFFS

---

**FRANCIS & MAILMAN, P.C.**
JAMES A. FRANCIS
JOHN SOUMILAS
GREGORY GORSKI
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

**DONOVAN SEARLES, LLC**
DAVID A. SEARLES
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 732-6067

**ROBERT S. SOLA, P.C.**
ROBERT SOLA
8835 SW Canyon Lane, Ste. 130
Portland, OR 97225
(503) 295-6880

**CONSUMER LITIGATION ASSOCIATES, P.C.**
LEONARD A. BENNETT
1215 Warwick Boulevard, Suite 1
Newport News, VA 23606
(757) 930-3660

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     NATURE AND HISTORY OF THE LITIGATION AND SUMMARY OF THE
        SETTLEMENT.................................................................................................3

III.    CLASS COUNSELS' FEE REQUEST SHOULD BE APPROVED AS FAIR
        AND REASONABLE .......................................................................................3

        A.  Class Counsel Are Entitled To A Reasonable Fee. ....................................3

        B.  A Lodestar Analysis Confirms That The Fee Requested Is Reasonable. ....................5

            1.  Hourly Rates .................................................................................5

            2.  Hours Expended............................................................................6

            3.  Costs .............................................................................................7

        C.  The Fee Requested Is Also Reasonable When Cross-Checked Against The
            Percentage Of Recovery Analysis ...........................................................7

        D.  This Action Was Taken On A Totally Contingent Basis ...........................13

        E.  The Level Of Success Achieved...............................................................14

        F.  Proportionality Is Not Appropriate In Assessing The Fee Request.............15

        G.  The Standing Of The Attorneys Involved .................................................16

        H.  The Absence Of Objections.......................................................................16

IV.     CLASS COUNSEL SHOULD BE REIMBURSED THEIR REASONABLE
        EXPENSES......................................................................................................17

V.      INDIVIDUAL SETTLEMENT AWARD.......................................................17

VI.     CONCLUSION ...............................................................................................19

## **TABLE OF AUTHORITIES**

### **CASES**

*AT&T Corp.*,
  455 F.3d 165 ..........................................................................................................9

*Barel* v. Bank of America
  2009 WL 122805 (E.D. Pa. 2009) ......................................................................18

*Blum v. Stenson*,
  465 U.S. 886 (1984).............................................................................................4,7

*Bonett v. Education Debt Services, Inc.*,
  2003 WL 21658267 (E.D. Pa. May 9, 2008)......................................................15

*Boone* v. City of Philadelphia
  668 F. Supp 2d 293, 705 (E.D. Pa. 2009) ..........................................................12

*Charles v. Goodyear Tire & Rubber Co.*,
  976 F. Supp. 321 (D.N.J. 1997)............................................................................4

*Gillespie v. Equifax Information Services, LLC*,
  Civ. No. 05-0138 (N.D. Ill. Dec. 18, 2009) (Doc. 218)......................................2

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)...........................................................................................6,14

*Ikon Office Solutions Security Litigation*,
  194 F.R.D. 166 (E.D. Pa. 2000)..........................................................................10

*In re Cendant Corp. PRIDES Litig.*,
  243 F.3d 722 (3d Cir. 2001) .................................................................................7

*In re Computron Software*,
  6 F. Supp. 2d 313 (D.N.J. 1998)...........................................................................4

*In re Continental/MidAtlantic Shareholders Litig.*,
  1987 U.S. Dist. LEXIS 8070, 1987 WL 16678 (E.D. Pa. 1987)........................18

*In re Diet Drugs Product Liability Litigation*,
  582 F.3d 524 (3d Cir. 2009) .................................................................................9

*In re First Jersey Inc. Sec. Litig.*,
  1989 WL 69901 (E.D. Pa. 1989) ........................................................................18

*In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 758 (3d Cir. 1995) ...................................................................................4

*In re Pet Food Products Liability Litigation*,
  2010 WL 5127661 (3d Cir. Dec. 16, 2010) (Weis, J.) .............................................3

*In re Prudential*,
  148 F.3d 332 ...........................................................................................4,10

*Oh v. AT&T Corporation*,
  225 F.R.D. 142 (D.N.J. 2004).................................................................................7

*Oslan v. Law Offices of Mitchell N. Kay*,
  232 F. Supp. 2d 436 (E.D. Pa. 2002)....................................................................15

*Perry v. Fleet Boston Financial Corp.*,
  229 F.R.D. 105 (E.D. Pa. 2005).........................................................................16,17

*Reibstein v. Rite Aid Corporation*,
  2001 WL 192512 ...................................................................................................15

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185....................................................................................................15

*Rode v. Dellarciprete*,
  892 F.2d 1177 (3d Cir. 1990) ...............................................................................6

*Serrano v. Sterling Testing Systems, Inc.*,
  711 F. Supp. 2d 402 (E.D. Pa. 2010)....................................................................13

*Sheffer v. Experian Information Solutions, Inc.*,
  290 F. Supp. 2d 538 (E.D. Pa. 2003)....................................................................15

*Student Public Interest Research Group of New Jersey v. AT&T Bell Laboratories*,
  842 F.2d 1436)......................................................................................................16

*Washington v. Philadelphia Court of Common Pleas*,
  89 F.3d 1031 (3d. Cir. 1996) ...............................................................................15

## OTHER AUTHORITY

Manual for Complex Litigation (Third),
  § 24.121 at 207 .....................................................................................................11

iv

# I.   **INTRODUCTION**

Plaintiffs Richard Chakejian, Bruce A. Summerfield and Tony Lee Webb petition this Court for approval of an individual settlement award to the Representative Plaintiffs and an award of attorney's fees and costs in accordance with the Settlement Agreement in this matter, preliminarily approved by Court Order dated October 21, 2010, and now pending final approval. *See* Doc. No. 124.  Class Counsel have devoted their time, skill, and resources to this matter wholly contingent upon a successful outcome, taking significant risks to obtain the result for the Class.

As outlined more specifically in Plaintiffs' Motion for Final Approval (filed contemporaneously herewith), Class Counsel's efforts have achieved a settlement which results in a cessation of Equifax's business practices that were the focus of the lawsuits, an economic value to Class members in the amount of 9.6 million dollars, and a significant benefit for consumers who make public records disputes in the future.  All of this was achieved while expressly preserving Class members' rights to litigate any actual damage claims that they may have against Equifax relating to any credit report inaccuracies that they may have.  Moreover, the settlement resulted from a novel theory of liability that had never previously been certified against a credit reporting agency.

Defendant has also agreed to pay, subject to the Court's approval, Plaintiffs' attorney's fees and costs; has funded the costs of notice and settlement administration; and, subject to this Court's approval, has agreed to an individual settlement award of $15,000.00 to each of the Representative Plaintiffs.

Plaintiffs now, as compensation for their attorneys' achievement and effort, and for accepting the risk that there would be no recovery if they were not successful, request the Court

to approve the portion of the settlement providing for attorney's fees and costs of $1,075,000.00, a sum less than the total of Class Counsel's aggregate lodestar. The amount requested is reasonable in light of the effort of Class Counsel and the successful result obtained, supported by a cross-check of the actual amount of time and expenses Class Counsel incurred in prosecuting this matter, as reflected in the supporting Declaration of Class Counsel filed herewith, and supported by a cross-check using the percentage of recovery analysis (fee requested amounting to approximately 11% of economic value).

As detailed below, Class Counsel's efforts and risks clearly justify the requested award of fees and costs as agreed upon by the parties and memorialized in section IV.E.1. of the Settlement Agreement. (Doc. No. 123-3). In support of their application for fees and reimbursement of costs and expenses, Class Counsel rely upon the declarations summarizing Class Counsel's time and the expenses incurred on behalf of the Class. *See* attached Declarations of James A. Francis, David A. Searles and Robert Sola, in support of Class Counsel's motion for fees and expenses filed herewith, attached hereto as Appendices 1, 2 and 3. In addition to the fact that the amount requested is supported by an analysis of counsel's lodestar and costs, and a cross-check under a common fund analysis, the fee requested is consistent with fees awarded in similar cases involving similar settlement amounts.[1]

The reaction of the Class supports the request for fees and expenses. The Notice provided to the 41,510 Class members expressly informed them that Counsel would apply for an

---

[1]      The case of *Gillespie v. Equifax Info. Servs. LLC*, Civ. No. 05-0183 (N.D. Ill. Dec. 18, 2009) (Doc. 218) is the most recent and similar FCRA class action to the case at bar. While brought under a different theory of liability and claims, it also challenged Equifax's practices. In *Gillespie*, the class recovered 6 months of credit monitoring services (Credit Watch Gold) and class counsel petitioned for $932,000.00 in attorney's fees and costs which was approved by the court. However, the *Gillespie* settlement provided for only 6 months of Credit Watch Gold, valued at $4,600,000.00, whereas as here, the Class will recover 18 months of Credit Watch Gold with a limited release, providing at least $9,675,981.00 worth of value to the Class, exclusive of the value to future consumers. (Plaintiffs' Motion for Final Approval, Appendix II, Stan V. Smith Expert Report, pg. 4). Thus, Class counsel has provided a benefit to the Class three-fold that of *Gillespie*, with just a slightly higher fee request that amounts to a much lower percentage of recovery.

award of attorney's fees of $1,075,000.00.  To date, only two (2) Class members have objected to the settlement or to the fee requested, which evidences both a satisfactory result and a reasonable fee.[2]

## II.   NATURE AND HISTORY OF THE LITIGATION AND SUMMARY OF THE SETTLEMENT

The procedural history of the case, nature of the claim asserted, and summary of the settlement are documented in Plaintiffs' Motion for Final Approval, which is being filed contemporaneously herewith.  So as to not burden the Court with redundant briefing, Plaintiffs incorporate and rely upon those sections of the final approval memoranda as though the same were set forth herein.

## III.   CLASS COUNSELS' FEE REQUEST SHOULD BE APPROVED AS FAIR AND REASONABLE

### A.   <u>Class Counsel Are Entitled To A Reasonable Fee</u>

An award of attorney's fees is a discretionary matter for the Court, considering the unique factors of the case.  *See generally In re Pet Food Products Liability Litigation*, 2010 WL 5127661, *20 (3d Cir. Dec. 16, 2010) (Weis, J., concurring in part and dissenting in part) (describing the purpose of carefully reviewing attorneys' fees)).  While the factors will vary from case to case, those generally considered by the Court in making this determination may include: (i) the time and effort applied to the matter by the plaintiff's counsel; (ii) the difficulty of the litigation; (iii) the contingent nature of the retainer; (iv) the standing, experience and expertise of

---

[2]    Only one of the objections contained any specificity.  That objection, from a Mr. Lichtenstein, states that he objects to the settlement, among other reasons, because he suffered financial harm due to Equifax not investigating a credit report dispute he made, and thus, that the settlement does not properly compensate him.  This objection is misplaced for two simple reasons.  First, the claims in the lawsuits at bar only concerned the representations contained within the disclosures that Equifax made to consumers, not how it handled credit disputes.  More importantly to Mr. Lichtenstein, the settlement does not in any way effect any claims that he may have against Equifax based upon the problem he has described.  Due to Class Counsel's vigorous representation and settlement negotiations, all Class members retain the right to bring claims for actual damages against Equifax based upon any failure it commits in connection with investigating credit report inaccuracies.

counsel; (iv) the reaction of the class members. *See In re Computron Software,* 6 F. Supp.2d 313, 323 (D.N.J. 1998).

There are two typical methods of calculating attorney's fees in class actions – the percentage of recovery method and the lodestar method. *See In re Prudential*, 148 F.3d at 332. The percentage-of-recovery method is often favored in cases involving a common fund, because it rewards counsel for success and penalizes counsel for waste or failure. *See Blum v. Stenson,* 465 U.S. 886, 900 n.16 (1984); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995). The lodestar method is more commonly applied in statutory fee-shifting cases, such as this consumer litigation case. *Charles v. Goodyear Tire & Rubber Co.,* 976 F.Supp. 321, 323 (D.N.J. 1997):

> Courts generally regard the lodestar method, which uses the number of reasonable hours times a reasonable rate, as the appropriate starting point for statutory fee shifting cases. "Because the lodestar award is decoupled from the class recovery, the lodestar assures counsel undertaking socially beneficial litigation … an adequate fee irrespective of the monetary value of the final relief achieved for the class."

*Charles,* 976 F.Supp. at 323 (quoting *GM Trucks,* 55 F.3d at 821). Fee shifting or statutory fee cases provide for mandatory attorney's fees, thereby penalizing the defendant and rewarding plaintiffs' counsel for socially beneficial litigation. *In re Prudential,* 148 F.3d at 332.

In this case, there is an entitlement to attorney's fees and costs pursuant to the Fair Credit Reporting Act ("FCRA"), a fee shifting statute. 15 U.S.C. § 1681n(a)(3). As such, the fee requested and agreed upon by the parties is less than the lodestar calculated using the normal reasonable hourly rates of counsel. As discussed below, the Court may appropriately approve the settlement terms providing for payment of attorney's fees, costs and expenses.

**B.**    A Lodestar Analysis Confirms That The Fee Requested is Reasonable

The parties have agreed that pursuant to the Court's approval, Defendant will provide attorney's fees in the amount of $1,075,000 to Class Counsel.  To exhibit the reasonableness of such an agreement, Plaintiffs below identify the attorney's fees and costs accrued during the pendency of these three Class action matters.

The lodestar and expenses for counsel here as described in counsels' respective Declarations is as follows: for Francis & Mailman, P.C., $948,354.00, reflecting over 2,383.30 hours of attorney and paralegal time, and costs of $54,860.37 (*see* Appendix I); for Donovan Searles, LLC, $262,405.00 reflecting over 445.90 hours of attorney and paralegal time, and costs of $7,433.95 (*see* Appendix II);   for Robert Sola, $54,120.00 reflecting over 98.4 hours of attorney and paralegal time (*see* Appendix III); time for all class counsel totals $1,264,879.00, reflecting over 2,927.6 hours of attorney and paralegal time, and costs total $62,294.32, for a total amount of time and costs of $1,327,173.30.

Clearly, Class Counsel have expended more time and effort in the litigation of the Classes' claims than is conferred upon them by the Settlement Agreement.  As such, the requested $1,075,000.00 is manifestly reasonable.

**1.**    Hourly Rates

The hourly rates for the firms of Plaintiffs' counsel are well within the range of what is reasonable and appropriate in this market.  *See* Declarations of counsel filed attached hereto; *see also* expert report of Abraham Reich, Esquire dated March 18, 2011 (while only addressing the rates of Francis & Mailman, P.C., also outlining the factors relevant to establishing hourly rates and market considerations), attached as Exhibit B to Francis Declaration.  The hourly rates for the attorneys in the firms are the same as the regular current rates charged for their services in

their standard non-class matters, including both contingent and non-contingent matters. There has not been any alteration or deviation from the firms' hourly rates to account for the added complexity or increased risk factor of this action. The attorneys concentrate their practice in the area of consumer protection litigation. The hourly rates are within the range charged by attorneys with comparable experience levels for consumer class action litigation of a similar nature.

The history and biography of each firm is included in the Declarations.

### 2.     **Hours Expended**

In support of this motion, the Plaintiffs have submitted many pages of detailed, contemporaneously produced time records specifying the date of work performed, the attorney performing the work, the nature of the work, the amount of time spent and the hourly rate charged for the tasks. Included in the time records are reasonable, albeit conservative, estimates of the time expected to be spent on the case after the date of this motion. This submission readily meets this Circuit's requirement of the degree of specificity required of a party seeking attorneys' fees in a percentage-of-recovery case. *See Prudential*, 148 F.3d at 341-43 (district court found detailed time summaries unnecessary where it was merely using lodestar calculation to double check fee award). Counsel's submission also meets the requirements for a statutory fee-shifting award. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) (specificity required to extent necessary to determine if the hours claimed are unreasonable for the work performed). The Declarations submitted herewith also set forth the basis for the division of labor among the firms and their efforts to litigate the case in an efficient manner. There was no time for which compensation is now requested in this case that was "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). All the time

submitted was reasonably necessary to achieve the successful outcome for the Plaintiffs and the Class.

### 3.   Costs

The Declarations of counsel filed simultaneously herewith show that costs as set forth therein were incurred in the prosecution of this case.   The bulk of those costs were for depositions, legal research services, travel, messenger services, telephone calls and copying charges for pleadings, documents, briefs.  All of the costs were advanced by Plaintiffs' counsel and were necessarily incurred.  Plaintiffs should be awarded the unreimbursed costs in full and these costs have been incorporated into the total amount negotiated by the parties for attorney's fees and costs.

### C.   The Fee Requested Is Also Reasonable When Cross-Checked Against The Percentage Of Recovery Analysis

In 1984, the Supreme Court observed that "[i]n the calculation of attorney's fees under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the value or benefit bestowed on the class." *Blum v. Stenson*, 465 U.S. at 900 n.16.  Subsequently, the Third Circuit Task Force Report in 1985 outlined the problems with the lodestar method and recommended that courts use the percentage-of-recovery method instead of the lodestar method in common fund cases.  *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 772, 734, 737 n. 20 (3d Cir. 2001) (percentage-of-recovery method long used in this Circuit in common fund cases).

The percentage of recovery fee doctrine applies in both the obvious cases where a cash fund has been created, as well as in cases where a Defendant's change in practice or agreement to bring its conduct into compliance creates or bestows an aggregated value to the class.  *Oh v. AT&T Corp.*, 225 F.R.D. 142 (D.N.J. 2004).  For example, in *Oh*, looking to Third Circuit precedent, the Court applied the percentage-of-recovery model in awarding counsel fees of

$3,301,446.00 where Plaintiff obtained the defendant's agreement to bring its actions into compliance with a tariff that required the defendant to provide consumer with two directory assistance listings. While there was no cash fund created, the Court found that the Defendant's agreement to provide consumers with this service as well as several other negotiated services including a short-term 1-800 directory assistance service created an aggregate value to class members in the amount of $13 million. Based upon this value, among other things, the *Oh* Court applied the percentage of recovery method and found that the request for counsel fees was appropriate on the basis that it amounted to 25.3% of the value created. *Oh*, 225 F.R.D. at 152.

As noted in the Settlement Agreement and memoranda supporting preliminary and final approval, Defendant has provided extensive practice changes and eighteen months of credit monitoring service for the benefit of the Class Members, assumed all costs of notice and settlement administration, agreed to pay $1,075,000.00 to satisfy the attorneys' fees and costs, and $45,000.00 in payment to the Representative Plaintiffs. Defendant has also agreed to discontinue the practices challenged in the litigation, and revise its disclosures to consumers in a manner that is more accurate, truthful and clear.

Based upon the Class size of 41,510, the economic value of Equifax's credit monitoring services to Class members of approximately 9.6 million dollars ($9,675,981), and the value of future relief to consumers, the settlement provides for an aggregate value of nearly thirteen million dollars ($12,996,181) in actual and prospective recovery for the Class and consumers in general.[3] *See* Expert Report of Stan V. Smith, filed as Appendix 2 to Plaintiffs' Motion for Final Approval. Accordingly, given that the amount requested by Class Counsel amounts to approximately 11% of the actual and realized economic value to Class members (8.2% if

---

[3]      Stan V. Smith also opines that the total benefit of the settlement is modestly valued at nearly $13,000,000.00, making Plaintiffs' request for attorney's fees and costs well within the range of reasonable percentages previously approved by this Court. *See* Expert Report of Stan V. Smith, at 4.

including value to future consumers based upon the Defendant's change in practices), the attorney's fees are reasonable when cross-checked under a percentage of value conferred analysis.

There are ten factors should be considered by a district court in setting percentage attorney fee awards in percentage-of-recovery cases: (1) the amount of the value created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement. *In re Diet Drugs Product Liability Litigation*, 582 F.3d 524, 541 (3d Cir. 2009); *AT&T Corp.,* 455 F.3d at 165, *citing* to *Gunter v. Ridgewood Energy Corporation*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). This is not an exhaustive list; in *Prudential*, the Third Circuit noted several other factors, 148 F.3d at 338, concluding that "[w]hat is important is that the district court evaluate what class counsel actually did and how it benefited the class." *Id.* at 342. The court has also pointed out that "fee award reasonableness factors 'need not be applied in a formulaic way' because each case is different, and in certain cases, one factor may outweigh the rest." *AT&T Corp.*, 455 F.3d at 166, citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005).

Counsel's requested fee is reasonable under all important factors. First, the amount of the value created and the number of persons benefited supports the fee request. While this may not

be a "megafund"[4] case, it is nonetheless a substantial value achieved on behalf of the Class. Those members will receive a significant benefit. In fact, smaller funds logically require a higher percentage fee award, due to the perception that large percentages of very large settlements lead to windfalls for attorneys. *See In re Prudential*, 148 F.3d at 339 (noting "inverse relationship" of large settlement to smaller percentage award); Third Circuit Task Force, 108 F.R.D. at 256 (recommending that percentage decrease as award increases).

As noted earlier, there have been to date only two objections to the settlement out of the 41,510 class members sent notice. This factor supports approval.

The third factor, counsel's skill and efficiency, supports approval. The quality of representation is measured by "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Ikon*, 194 F.R.D. at 194. Here, Plaintiffs' counsel brought a case articulating a theory of class recovery that Defendant vigorously challenged throughout pleadings, class certification, discovery, by filing a motion for summary judgment, by two separate Rule 23(f) petitions to the Third Circuit, and by defending the case through opening statements at trial for the *Chakejian* matter. Counsel have a wide range of experience in consumer class action litigation, as evidenced by the information set forth in their respective Declarations, attached hereto. As set forth therein, counsel have been certified to represent consumer classes many times, by this Court and others, which is testament to their skill, expertise and reputation.

The fourth factor also supports approval. The litigation was extensive, lasting nearly three years and spanning three jurisdictions, the parties having reached a settlement only after

---

[4]    $100 million has been recognized as the "informal marker of a 'very large' settlement." *Ikon,* 194 F.R.D. at 195, quoting *In re Prudential*, 148 F.3d at 339.

opening statements had been given in the *Chakejian* matter, and many hours of effort were expended in investigation, written discovery, deposition practice, substantive and dispositive motion practice, an appeal and negotiations. This case involves potentially complicated issues of liability and damages which, if pursued, would involve trial for the *Chakejian* matter and protracted litigation between the parties as to the merits of the *Summerfield* and *Webb* claims.

The fifth factor, risk of nonpayment, is neutral.

The sixth factor is the amount of time devoted to the case by Plaintiffs' counsel. The settlement of this case was reached finalized more than three years after it was filed. The hours spent on the case were devoted to class certifications, defending two Rule 23(f) appeals, motions practice, including defending a motion for summary judgment, written discovery, depositions practice, two days of mediation before JAMS, protracted settlement negotiations and trial preparation. While counsel spent many hours on a case that reached a settlement, those hours were essential to the result obtained. The settlement negotiations, in particular, were adversarial and protracted, requiring a number of meetings and conference calls between the parties, confirmatory discovery and the exchange and revisions of numerous draft settlement documents.

As set forth in the attached Declarations of counsel, the number of hours devoted to this case by the four firms representing the Class totals 2,383.30 hours. All things considered, the number of hours devoted to this case are sufficient that this factor supports the requested fee award. *See* MANUAL FOR COMPLEX LITIGATION (THIRD), § 24.121 at 207 (one purpose of the percentage method of awarding fees - rather than the lodestar method, which arguably encourages lawyers to run up their billable hours - is to encourage early settlements by not penalizing efficient counsel).

When considering the seventh prong of the *Gunter* analysis, "awards in similar cases," a court looks to cases of similar size, and not necessarily similar subject matter. *See Cendant PRIDES*, 243 F.3d at 737. On both fronts, the settlement is solidly in the appropriate range. In considering that factor as applied in very large settlements, this Court has noted that, while percentages have varied, most appear to fall in the range of 19-45 percent. *Ikon,* 194 F.R.D. at 194 (approving award of fee of 30% of net settlement fund of $108,915,874).

In this case, the parties have agreed to attorney's fees and costs of $1,075,000.00 which is roughly 11% of the $9,675,981 in value achieved for the Class by way of credit monitoring services, exclusive of future value or other aspects of the settlement (e.g. cost of notice and administration, etc.).

Recently, in connection with a motion for attorney's fees and final approval of a class action settlement involving allegations of improper strip searching at Philadelphia prisons, this Court took note of a detailed study of class action fee awards within our Circuit, and ascertained that the average attorney's fees percentage in such cases was 31.71% and that the median fee award was 33.3%. *Boone,* 2009 WL 3646398, *16 (*citing In re Rite Aid Corp., Securities Litigation*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (McLaughlin, J.).

Based on average and median fee percentages routinely approved in class action cases, it would appear that Plaintiffs' requested percentage of roughly 11% is eminently reasonable and supports the fee request.

The eighth factor, value of benefits attributable to the efforts of Class Counsel relative to the efforts of other groups, supports approval. The entirety of the value achieved for the Class was attributable to Class Counsel; no other groups, such as government agencies conducting investigations, were involved in this case.

The ninth factor, the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement, is a non-factor.

The tenth and last factor, any innovative terms of the settlement, supports approval. Plaintiffs and their counsel have obtained a complete cessation of a practice misleading and detrimental to the interests of consumers inquiring as to the source of their public records information reporting on their credit reports. Plaintiff has also achieved a limited release, which only releases the Class Members' ability to bring an action relating to the form letter giving rise to this litigation, and maintains the Class Members' ability and option to bring a separate case for actual damages or to correct any public records inaccuracies on their credit report or file.

In summary, Plaintiffs' request for an award of fees and costs calculated as a percentage of the value of the benefit achieved for the Class is reasonable under all the applicable factors.

**D.**     **This Action Was Taken On A Totally Contingent Basis**

Another factor for the Court to consider in awarding fees is the contingent nature of the litigation. *Serrano v. Sterling Testing Systems, Inc.*, 711 F.Supp.2d 402, 422-23 (E.D. Pa. 2010), citing *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973). Here, the litigation was totally contingent. As Judge Pratter pointed out in approving a fee award in another FCRA class settlement, Class Counsel were unable to mitigate any of the risk of nonpayment and, in fact, were required to spend, or incur obligations, to effectively litigate this case.

Class Counsel undertook a substantial commitment of time and money to prosecute this class action. The Class itself risked nothing out-of-pocket. *Serrano*, 711 F.Supp.2d at 422-23.

### E.     The Level of Success Achieved

Counsel obtained for the Class an excellent result. Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley,* 461 U.S. at 436.

First, as outlined more specifically in the memorandum of law supporting final approval, the settlement results in the largest credit monitoring service recovery for a class and widespread practice changes that are valued in the range of the maximum the Class could achieve if they prevailed at trial, *without* any release of their right to pursue actual damages.

Second, the lawsuit and settlement brought about a cessation and change in the Defendant's practice that was the subject of the litigation, and thus, achieves a settlement injunction.

Third, liability in this case was vigorously contested and Plaintiffs' claims involved legal issues under the FCRA that had yet to be addressed by any federal court until this Court's decision denying Defendant's motion for summary judgment.

Fourth, the parties reached the settlement only after discovery, motion practice, class certification in the *Chakejian* and *Summerfield* actions, a Rule 23(f) challenge in the Third Circuit in the *Chakejian* and *Summerfield* actions, hard-fought negotiations mediated by JAMS on several occasions, and the first day of trial.

The settlement obtains a substantial recovery for the Class, represents a tangible benefit for all those Class members who could not otherwise retain any counsel to ensure their rights were protected, is well within the range for similar cases and provides for a recovery in an environment of serious, practical risks and/or impediments to the ultimate success of the claims. Thus, the requested fee is reasonable in relation to the benefit achieved.

**F.**     **Proportionality is Not Appropriate in Assessing The Fee Request**

Some courts have raised a concern in consumer protection cases as to whether the requested fee is reasonable in light of the amount of the sums earmarked for class members. However, the fact that the statutory cap of $1,000 may not be a great sum in relation to Plaintiffs' fee request does not make that request unreasonable. *Reibstein v. Rite Aid Corporation*, 2011 WL 192512 at *14 ("Assuredly, Congress envisioned that the amount of attorneys' fees would exceed the total class recovery in [FCRA] class action suits").   Since Plaintiffs prevailed on the only claims raised in their Complaints, the fee award cannot be diminished to maintain some ratio between the fee and the damages. *Serrano*, 711 F.Supp.2d at nn. 14-15, citing to *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d at1031, 1041-42 (3d Cir. 1996); *Sheffer v. Experian Information Solutions, Inc.*, 290 F.Supp.2d 538, 550-51 (E.D. Pa. 2003) ("proportionality analysis between the amount of damages awarded and the amount of counsel fees requested … is an impermissible basis upon which to reduce a fee award"); *Bonett v. Education Debt Services, Inc.*, 2003 WL 21658267, *8 (E.D. Pa. May 9, 2003); *Oslan v. Law Offices of Mitchell N. Kay*, 232 F.Supp.2d 436, 444 (E.D. Pa. 2002).   This is especially true where, as here, Plaintiffs have achieved a future benefit for the Class in addition to a valuable credit product. *See* Expert Report of Stan V. Smith.

Under fee-shifting statutes such as the FCRA, the amount of attorney's fees awarded is not required to be proportionate to the amount of damages recovered.   This is to encourage private counsel to enforce important consumer rights legislation.   Noting that Congress contemplated that civil plaintiffs would act as private attorneys general, the Third Circuit has stated:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer protection, and environmental policies.  By providing competitive rates

> we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Student Public Interest Research Group of New Jersey v. AT&T Bell Laboratories*, 842 F.2d

1436, 1449 (3d Cir. 1988). *See also*, *Perry v. Fleet Boston Financial Corp.*, 229 F.R.D. 105, 123

(E.D. Pa. 2005) (noting importance of awarding fees in consumer protection class litigation that

"addresses important consumer concerns that would likely be ignored without such class action

lawsuits [and] must be encouraged").

The same principles apply here in the context of a settled case. While the fees sought by

Plaintiffs' counsel might be considered by some to be relatively large in relation to the amount of

recovery provided by the individual value available to members of the Class, in actuality the fees

are reasonable under the circumstances.

### G.   The Standing Of The Attorneys Involved

The attorneys involved in this case have reputations in Pennsylvania and nationally for

handling class action litigation. *See* attached Declarations. Class Counsel have worked together

in the past and worked together here in a coordinated manner to avoid duplication of effort and

achieve the settlement.   Class Counsel have either described their experience in their

Declarations and/or included their firm biographies as exhibits submitted in support of fees.

### H.   The Absence of Objections

As indicated above, the notice disseminated to the 41,510 class members stated that Class

Counsel would seek an award of the counsel fees and costs of $1,075,000.00, subject to Court

approval. With the exception of the costs of notice and settlement administration costs paid by

Defendant, costs and expenses were borne by Class Counsel to litigate this action. Out of the

Class members receiving notice, only one Class member has objected to payment of the

requested fees and cost reimbursement. The lack of any serious objection is a highly significant indicator of the reasonableness of the fee request. *See Perry,* 229 F.R.D. at 124.

Class Counsel has worked diligently and has achieved this beneficial result through their combined, coordinated efforts. Counsels' ability to effectively bring this case to a conclusion should be reflected in the awarding of the full fee requested.

## IV.   CLASS COUNSEL SHOULD BE REIMBURSED THEIR REASONABLE EXPENSES

The efforts of Class Counsel have resulted in substantial common benefits to the class. In doing so, Class Counsel incurred out-of-pocket expenses in the aggregate amount of $54,860.37, for filing, postage, travel, research and copying costs. *See* Declarations at Appendices I-II. These costs are eminently reasonable in light of the complicated nature of the action and the tasks that needed to be performed.

## V.   INDIVIDUAL SETTLEMENT AWARD

Plaintiffs' counsel also seeks this Court's approval of a $15,000.00 as individual settlement award for each representative Plaintiff, Richard Chakejian, Bruce A. Summerfield and Tony Webb, for their willingness to undertake the risks of this litigation and shoulder the burden of such litigation. In this case, there would be no benefit to Class members if the Class representatives had not stepped forward. Representative Plaintiffs devoted time and energy to the litigation, consulting with counsel as necessary, appearing for deposition and trial in the case of Mr. Chakejian, and totally fulfilled their obligations as Class representatives.

Moreover, unlike Class members, each Class representative has given Equifax a full release, as opposed to the limited one given by Class members which preserves their right to pursue actual damages claims against Equifax based upon any credit report public record inaccuracies.

Class Counsel therefore requests that the Class representatives receive an individual settlement award of $15,000.00, each.  This award represents recognition of the benefit of the settlement they have achieved for the Class, their efforts in allowing Class Counsel to fully litigate the case and the releases that they have given.  Class members were notified that Class Counsel would request an award for representative Plaintiffs in this amount and only one of 41,510 Class members objected.

This award is well within the range of awards made in similar cases. *See Barel,* 2009 WL 122805 at *8 ($10,000); *Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 188 (S.D.N.Y. 1997) (awarding $25,000 to $85,000 incentive awards); *In re First Jersey Inc. Sec. Litig.,* 1989 WL 69901, MDL 681 (E.D. Pa. 1989) ($25,000); *In re Continental/Midlantic Shareholders Litig.,* 1987 U.S. Dist. LEXIS 8070, 1987 WL 16678 (E.D. Pa. 1987) ($10,000); *accord, Diamond v. Fogelman,* [1990 Transfer Binder] Fed.Sec.L.Rep. (CCH) para. 96,980 at 94,245 (the plaintiff "was actively involved in the strategy and discovery aspects of this litigation. No other member of the class was actively involved. Few even made the effort of contacting this Court or the class attorneys.  Therefore, [the plaintiff] deserves some compensation for the effort he expended"). Accordingly, the award requested for Representative Plaintiffs should be approved.

## VI.   **CONCLUSION**

Under all the circumstances existing here, the request for fees and costs is more than reasonable.   For all the foregoing reasons, Plaintiffs request that the Court award reasonable attorney's fees and reimbursement of expenses in the total amount of $1,075,000.00, and the sum of $15,000.00 to each Class Representative, Richard Chakejian, Bruce A. Summerfield and Tony Webb.

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**


*/s/ James A. Francis*
JAMES A. FRANCIS
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

**DONOVAN SEARLES, LLC**
DAVID A. SEARLES
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 732-6067

**ROBERT S. SOLA, P.C.**
ROBERT S. SOLA
8835 SW Canyon Lane, Ste. 130
Portland, OR 97225
(503) 295-6880

**CONSUMER LITIGATION ASSOCIATES, P.C.**
LEONARD A. BENNETT
12515 Warwick Blvd., Ste. 1
Newport News, VA 23606
(757) 930-3660

Dated: March 18, 2011                    Attorneys for Plaintiffs and Class